UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

ALMA ENERGY LLC                                              CASE NO. 07-70370

DEBTOR

**MEMORANDUM OPINION AND ORDER**

On October 5, 2007, the court issued an order for parties to brief the court over the "the 15% dispute" issue (DOC 136). On October 15, 2007, Kentucky Coal Venture filed its brief (DOC 152) on "the 15% dispute" arguing that the plain language contained in Paragraph 1 of the Framework Agreement provides payment of 15% from gross sales. On October 22, 2007, Debtor filed a memorandum (DOC 153) on "the 15% dispute" contending that there were three agreements entered into on August 9, 2006, a Framework Agreement, an LLC Agreement, and a Mining Agreement; which read together, clearly provides that the LLC Agreement supersedes the Framework Agreement, and that the LLC Agreement clearly provides for the payment of 15% to be from cash flow. On October 27, 2007, Kentucky Coal Venture filed a response to the Debtor (DOC 154) contending that Debtor is estopped by prior conduct from arguing that Kentucky Coal Venture is not entitled to payment of 15% from gross sales as Debtor's prior course of conduct indicates that the understanding between the parties was that payment was to be from 15% of gross sales.

On October 30, 2007, Creditors West River, Street, and Roulett filed a memo (DOC 158)on "the 15% dispute" arguing that it would have been unreasonable for Debtor to enter into an agreement providing payment of 15% from gross sales. On November 5, 2007, Kentucky Coal

Venture filed a response to the creditors' memo (DOC 160) contending that the creditors have no standing to argue what is in the agreements as they were not involved in the negotiation or drafting of the agreements. On November 8, 2007, the creditors filed a supplemental memo (DOC 165)arguing that they have standing under 11 U.S.C. § 1109(b), and that they have never heard of a 15% gross sales arrangement. On November 8, 2007, Kentucky Coal Venture filed a reply (DOC 167)contending that the creditors have heard of a 15% gross sales arrangement.

This matter calls for the court to determine if the payment of 15% is to come from gross sales or from cash flow.

<u>Standing</u>.

Kentucky Coal Venture contends that the other creditors have no standing to argue what is in the agreements as they were not involved in the negotiation or drafting of the agreements. The creditors argue that they have standing under 11 U.S.C. § 1109(b).

"A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." <u>11 U.S.C. 1109(b)</u>. Courts have . . .restricted the section through application of principles of standing. <u>Collier on Bankruptcy ¶ 11.09.01[3]</u>. The Seventh Circuit has applied principles of standing to Section 1109(b), and has stated: "We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an in rem proceeding – that everyone with

a claim to the res has a right to be heard before the res is disposed of since that disposition will extinguish all such claims." In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992). Here, the creditors clearly have an interest in the bankruptcy proceeding. The court finds that the creditors have standing.

The Agreements.

The agreements are provided in the Kentucky Coal Venture brief (DOC 152). There are three agreements, all dated August 9, 2006, a Framework Agreement, an LLC Agreement, and a Mining Agreement. The Framework Agreement contemplates that the 15% payment would come from gross sales. The LLC Agreement contemplates that the 15% payment would come from cash flow. So there is a conflict between the Framework Agreement and the LLC Agreement.

Paragraph 11 of the Framework Agreement has a provision that if either the LLC Agreement or the Mining Agreement conflict with the Framework Agreement, that the provisions of the LLC Agreement or the Mining Agreement shall supercede the provisions of the Framework Agreement. Thus, the LLC Agreement supercedes the Framework Agreement, and the LLC Agreement clearly contemplates the 15% payment to come from cash flow.

Kentucky Coal Venture correctly points out that the Debtor is responsible for costs, but that in no way changes the fact that the LLC Agreement clearly provides that the 15% payment is to come from cash flow.

There is no ambiguity in the agreements, so who drafted the contracts is of no significance. It is clear that when the agreements are read together as a whole, they contemplate the 15% payment to come from cash flow.

Kentucky Coal Venture argues that Debtor's prior conduct shows that Debtor believed that the 15% payment was from gross sales. "Absent a showing of fraud, duress, or mistake, when two parties have a written contract that is clear and unambiguous, that contract is presumed to express the intent of the parties, and parol evidence is not admissible to vary, alter, or contradict the terms of that contract." <u>Liberty Mut. Ins. Co. v. Ben Lewis Plumbing, Heating & Air Conditioning, Inc.</u>, 121 Md. App. 467, 710 A.2d 338 (1998). There is no disagreement that Maryland law controls here, and Maryland law clearly shows that Debtor's prior conduct is not admissible to contradict the terms of the clear and unambiguous agreements.

The evidence here is the agreements, and they contemplate the 15% payment to come from cash flow.

In consideration of the foregoing, the court finds that the agreement between the parties is that the 15% payment is to come from cash flow. It is HEREBY ORDERED that any payment to Kentucky Coal Venture will be determined based on cash flow pursuant to the agreements.

COPIES TO:

Paul Stewart Snyder, Esq.
Michael J. Gartland, Esq.
James W. Gardner, Esq.
Philip Hanrahan, Esq.
J. Alec MacKenzie, Esq.
John T. Hamilton, Esq.
Mary Elisabeth Naumann, Esq.
Arthur M. Standish, Esq.
Ellen Arvin Kennedy, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
<u>*William S. Howard*</u>
**Bankruptcy Judge**
**Dated: Tuesday, November 20, 2007**
(wsh)