UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

ALMA ENERGY, LLC

        DEBTOR

CASE NO. 07-70370
CHAPTER 11

---

## MOTION OF ALMA ENERGY LLC, DEBTOR-IN-POSSESSION, FOR ORDER APPROVING SETTLEMENT OF ADVERSARY PROCEEDING NUMBERS 07-7025 AND 07-7032 AND RELATED LITIGATION
### and
### NOTICE OF HEARING

---

## I.  INTRODUCTION

Comes now Alma Energy LLC, the Debtor-In-Possession (the "Debtor") and Plaintiff in Adv. Proc. Nos. 07-7025 and 07-7032 (the "Adversary Proceedings"), by counsel, and hereby requests that the Court enter an Order approving settlements reached in, among other actions and proceedings, the Adversary Proceeding.  The settlements reached in the Adversary Proceedings and in collateral litigation are fair and reasonable, in the best interests of creditors, and fall well within the range of potential litigation outcomes.  For these reasons, the Court should grant the relief requested herein, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtor state as follows:

## II.  JURISDICTION

1.      On August 13, 2007, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), which filing commenced the above-captioned Chapter 11 case (the "Chapter 11 case").

2.      This Court has jurisdiction over the Chapter 11 case pursuant to 28 U.S.C.

§§ 157(a) and 1334(b), and Joint Local Rule 83.12(a)(3) of the United States District Court for

the Eastern and Western Districts of Kentucky, pursuant to which all cases filed in the Eastern

District of Kentucky under the Code and any or all proceedings arising under the Code or arising

in or related to a case under the Code are referred to bankruptcy judges of this District.

3.      Venue of the above-captioned Chapter 11 case is proper in this Court pursuant to

28 U.S.C. § 1408(1).

4.      The statutory predicates for the relief sought herein are section 105(a) of the Code

and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.

5.      This is a core proceeding.  The Court has jurisdiction to enter a final Order on this

Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

### III.  FACTUAL BACKGROUND

6.      On April 21, 2005, the Debtor was formed in the Commonwealth of Virginia with

three members, Joe B. Street ("Street"), J.B. Roulett ("Roulett"), and Nathan J. Williams

("Nathan Williams").

7.      On June 28, 2005, the Debtor purchased from Martin County Coal for the sum of

1.7 million dollars, a partial assignment of a mineral Lease on 496 acres located near Ransom,

Kentucky, with coal reserves of approximately 2 million tons of the Lower Alma Seam of coal,

and associated mine structures.

8.      Immediately thereafter, the Debtor spent almost $1,000,000.00 preparing this

property to be mined, and more than an additional million dollars purchasing and refurbishing

equipment to mine, and in the fall of 2005 opened Right Fork Energy mine #1 on the property.

9.      In June 2006, the Debtor purchased for 1.5 million dollars another partial assignment of a lease from Martin County Coal of Lower Alma Seam coal, adjacent to the first tract, containing over 1,800,000 recoverable tons of coal.

10.      In the late summer of 2006, the Debtor and Darrell K. Williams and Nathan J. William (the "Williamses") approached Warren E. Halle ("Halle") with a proposed project involving the purchase of mining rights held by KISU Service Co. Inc., a Kentucky corporation.

11.      On July 27, 2006, KCV I was organized to pursue this and other projects. The Debtor, owned by Street, Roulett, and Nathan Williams, and THC Kentucky Coal Venture I, LLC ("THC"), a  Halle-related entity, were named as members of KCV I, with THC being designated the managing member of KCV I with full control of the business and financial decisions.

12.      On August 9, 2006, the Debtor entered into three agreements with KCV I, a Framework Agreement, a Mining Agreement, and an LLC Agreement, and assigned its leases to KCVI.

13.      As part of the August 9, 2006 transaction, Street and Roulett sold their membership interests in the Debtor to Nathan Williams in consideration of $4,454,554.75 of the sums paid by THC, making Nathan Williams the sole remaining member and owner of the Debtor.  In further consideration, the Debtor agreed to pay Street one dollar per ton and Roulett one dollar per ton from all future coal mined by the Debtor.

14.      Under the LLC Agreement the Debtor was given the exclusive right to mine and sell all the coal reserves KCV I had acquired from the Debtor, and any future coal that was acquired  by KCV I in and around Pike County Kentucky, for a period of twenty years.

15.      Furthermore, Williams was to be the exclusive agent of KCV I in and around Pike County, Kentucky to find more reserves, perform due diligence, and acquire the reserves for ownership by KCV I, for the same period of twenty years.

16.      On June 1, 2007, Alma filed in this Court a voluntary petition for relief under Chapter 11 of the Code, Case Number 07-70258 (the "Prior Chapter 11 Case").

17.      In the Prior Chapter 11 Case, the Debtor commenced Adv. Proc. No. 07-7020 against KCV I; Kentucky Coal Venture II, LLC; THC; West Virginia Coal Venture I, LLC; KWV Operations, LLC; Ken Adamson; Halle; and Tony Gannacone III (collectively, the "Halle/Gannacone Defendants").

18.      By Order dated August 3, 2007, the Prior Chapter 11 Case was dismissed upon motion of KCVI, with Adv. Proc. No. 07-7020 being subsequently dismissed on August 24, 2007.

19.      On August 13, 2007, the Debtor filed another voluntary petition for relief under Chapter 11 of the Code.

**A.      Subject matter of Adv. Proc. No. 07-7025.**

20.      On August 20, 2007, the Debtor commenced Adv. Proc. No. 07-7025 against the Halle/Gannacone Defendants, seeking damages and injunctive relief, and alleging that from August 9, 2006, forward, the Halle/Gannacone and other unknown employees and agents of such defendants conspired and engaged in a course of conduct that gave rise to claims and causes of action for, *inter alia*, fraud, tortious interference with contractual relations, breach of contract, and fraudulent transfers.

21.      The Halle/Gannacone Defendants filed Answers in Adv. Proc. No. 07-7025 by which they denied any liability to the Debtor and asserted certain defenses.

22.      If the Debtor were to prevail on the claims and causes of action at issue in Adv. Proc. No. 07-7025, the contracts dated August 9, 2006 and related thereto would have been enforced, allowing the Debtor the right to mine certain Kentucky and West Virginia properties owned by one or more of the Halle/Gannacone Defendants.

**B.      Subject matter of Adv. Proc. No. 07-7032.**

23.      On September 29, 2007, the Debtor initiated Adv. Proc. No. 07-7032 against KCVI and Halle, seeking damages and injunctive relief on account of alleged violations of the automatic stay provisions of Section 362(a) of the Code.

24.      On October 25, 2007, KCVI and Halle filed an Answer to the Complaint filed in Adv. Proc. No. 07-7032 by which they denied any liability to the Debtor and asserted certain defenses.

25.      If Alma were to prevail on the claims asserted in Adv. Proc. No. 07-7032, it contends that it would be entitled to damages and injunctive relief against KCVI and Halle.

**C.      Subject matter of the Maryland and Pikeville civil action.**

26.      On May 22, 2007, KCV I filed with the United States District Court for Maryland, Greenbelt Division, a Complaint against the Debtor, Williamses and Nathan's Welding, LLC (the "Maryland Defendants"), which filing commenced an action styled as Kentucky Coal Venture I, LLC v. Alma Energy, LLC, et al., Case No. 8:07-cv-01339-AW (the "Maryland Action").  In the Maryland Action, KCVI alleged that the Maryland Defendants engaged in a course of conduct that included breaches of contracts, fraudulent acts, knowing misrepresentations, tortious interference, bad faith accounting practices, and other actionable conduct.

27.     On June 4, 2007, KCV I filed an Amended Complaint in the Maryland Action staying the litigation against the Debtor.

28.     On June 27, 2007, the Maryland Defendants filed an Answer in the Maryland Action denying any liability to KCVI.

29.     If KCVI were to prevail in the Maryland Action, significant damages could be awarded against Darrell K. Williams, Nathan Williams, the sole owner of the Debtor, and Nathan's Welding, LLC, the holder of mining permits under which the Debtor operates mines in Kentucky.

30.     Sometime during the Spring or Summer of 2007, THC and Halle filed a Complaint in the Pike Circuit Court, Pikeville, Kentucky, Case No. 07-C1-00910 (the "Pike Action"), alleging that the Nathan Williams and Nathan's Welding, LLC were in default of certain obligations owed to Plaintiffs, including, but not limited to, an Installment Promissory Note dated February 16, 2007 in the original principal amount of $160,000.00 executed and delivered by Nathan Williams to THC.

31.     The Defendants in the Pike Action filed an Answer denying any liability to Plaintiff.

32.     The Defendants in the Pike Action filed a Third-Party Complaint in the Pike Circuit Court against Halle and related entities.

33.     The Defendants filed their Answer vigorously denying the allegations in the Third-Party Complaint and asserting affirmative and other defenses.

**D.     Relevant proceedings in this Court.**

34.     On October 2, 2007, this Court entered an Order approving a Mining Agreement whereby BDC 1, LLC, was appointed as a contract miner for the Debtor.

35.    On October 3, 2007, this Court entered an Order approving debtor in possession financing.

36.    On November 20, 2007, this Court entered a Memorandum Order and Opinion interpreting certain provisions of the Agreements executed between the Debtor and THC, from which KCV I filed a Motion for Reconsideration on November 30, 2007.

37.    The litigation of the Adversary Proceedings has been extensive and expensive. The parties exchanged more than 15,000 pages of documents in discovery.  Approximately fifteen depositions were taken in two different states.  Several requests for production of documents, sets of interrogatories and requests for admissions were served and responded to.

38.    In all, the parties to Adversary Proceedings have incurred more than $750,000.00 of attorneys' fees, costs and expenses.

39.    On November 26, 2007, the parties orally agreed to settle the litigation during a mediation hearing held in the Maryland Action.  The oral settlement was memorialized by Settlement Term Sheet, which was executed on November 30, 2007.

40.    The Settlement Term Sheet laid the ground work for the preparation and execution of a Settlement Agreement dated December 14, 2007 (the "Settlement Agreement"). The Settlement Agreement took approximately ten days to negotiate and finalize.

41.    A true and correct copy of the Settlement Agreement, including Exhibits thereto, is attached hereto as Exhibit A.

**E.    The material terms of the Settlement Agreement.**

42.    All of the terms of the settlement reached between and among the parties to the two Adversary Proceedings, the Maryland Action and the Pike Action are set forth in detail in the Settlement Agreement and Exhibits attached hereto as Exhibit A, which document is

incorporated herein by reference.  The Debtor urges all creditors and parties in interest to read

the Settlement Agreement in its entirety.

43.    Pursuant to the Settlement Agreement:

a.    All the Halle/Gannacone Defendants with the exception of Gannacone are hereinafter referred to as the "Halle Defendants."  The Halle Defendants are relieved of all obligations to provide additional investment capital and/or loans to KCVI and/or the Debtor.

b.    The Debtor shall be fully responsible for any and all future and past costs of its operations and shall not look to any of the Halle Defendants for payments of any kind.

c.    Any claims against the Debtor, whether past, present, or future, shall be the sole responsibility of the Debtor.

d.    The Agreement is a Mutual Release of all claims and causes of action by, between, and among the following: Darrell K. Williams; the Debtor; Nathan's Welding; Nathan Williams; and the Halle Defendants (the "Parties"); and all other entities controlled by, owned in part by or associated with Halle.

e.    All claims against Billy Shelton and James P. Pruitt, Jr. by any party are released by the Parties.

f.    The mutual releases apply to all owners, agents, officers, directors, attorneys, employees and members of any released or releasing party.

g.    Nothing in the Settlement Agreement shall be construed to release or be intended to be a release of any claims or causes of action that any signatory to this Settlement Agreement may have against any of the following:  Street, Roulett, West River Conveyors and Machinery Company, any entity owned or controlled by Street and/or Roulette, or the Grundy National Bank.

h.    Except as otherwise provided herein with regard to the Properties, the Debtor, Darrell K. Williams, Nathan Williams, and Nathan's Welding release all claims they have relating to the Glen Alum, Logan, or any other properties in which KWV, Halle or any Halle-related entity has an ownership interest.

i.    The Debtor is solely responsible for resolving, paying and/or discharging all claims of the creditors in the above-captioned Chapter 11 case.

j.   KCVI will withdraw the Proof of Claims (Claim No. 1-1, as amended by Claim No. 1-2) that it filed in such case, except that THC or its designee is hereby given title (free and clear of all liens, claims and encumbrances) to the batteries; one D-9 dozer; one DB 25 and one DB 30 rock truck, and one scoop, all of which personal property is currently located at Glen Alum. The Debtor shall take all reasonable steps to transfer legal title to said items to THC or its designee.

k.   The Debtor shall take all reasonable steps to determine the allowability and validity of all claims filed in this Chapter 11 case.

l.   KCVI shall assign to THC all right, title and interest in and to all claims and/or payments relating to the matters discussed herein and KCVI shall have no further interest in and to any claims, benefits or rights relating to any agreements previously entered into with the Debtor or its affiliates.

m.   THC or its designee will also be given title to one 980-B loader and one 988-A loader currently located at Netley Mines free and clear of all liens, claims and encumbrances.

n.   Nathan Williams or his designee shall be provided title to the following equipment from THC or its designee: one of the DB rock trucks (at THC's choice), one scoop, the 980-B loader, the 988-A loader. THC or its designee will retain all other equipment in which KCV I has an interest.

o.   THC or its designee will be paid a royalty of 7.0% of the gross sales price per ton up to a price of $65.00 per ton (which price shall be the price actually paid by the purchaser of the coal and shall not be reduced by any additional costs or fees including, without limitation, trucking and all other costs of the Debtor or any operator or one of its contractors engaged by the Debtor to perform mining services at the Kentucky mines ("Alma's Operator"), including, but not limited to, William Detherage and BSD1, LLC); provided, however that in no event shall the minimum royalty paid to THC or its designee be less than $4.20 per ton.

p.   THC will receive said royalty payment before all other obligations and debts of the Debtor are paid or satisfied.  If the gross sales price exceeds $65.00 per ton, THC will receive $4.55 plus an additional $.50 for every additional $1.00 increase in sales price in excess of $65.00 per ton, mined from the existing Kentucky properties.

q.   If the Debtor washes its coal at Glen Alum, however, for the purpose of determining the royalty payment, the price charged to wash the coal will be subtracted from the ultimate gross sales price and the royalty will be calculated on the difference only.  By way of illustration, if the Debtor is charged $6.00 per clean ton to wash its coal at Glen Alum, and then sells the washed coal for $81.00, the gross sales price will be

9

deemed to be $75 for the purpose of calculating the royalty and the royalty will be $9.55 per ton. The actual cost of washing the coal will be agreed upon by the Debtor and Glen Alum prior to the coal being washed. In addition, it is understood that this arrangement is not binding upon the Debtor to ship its coal to Glen Alum and is not binding on Glen Alum to accept and wash the Debtor's coal. The Debtor will be responsible for arranging any factoring of its coal. THC and Glen Alum will not factor the Debtor's coal.

      r.    All coal sales proceeds will be deposited with a mutually agreed upon escrow agent who will be responsible for the payments set forth herein.

      s.    The Debtor and/or Alma's Operator or one of its contractors shall provide to THC basic documentation confirming coal production and coal sales and payment of all government mandated charges, all taxes and all royalties.

      t.    Insurance will be provided and maintained by the Debtor or Alma's Operator or one of its contractors in the amount of $1,000,000 per incident/$2,000,000.00 per occurrence primary Commercial General Liability coverage and $10,000,000.00 in excess umbrella liability coverage. THC or its designee will be named as an additional insured.

      u.    The Debtor's failure to provide required production reports by the next business day will result in a payment due to THC or its designee in an amount equal to an additional 10% of the gross sales price for each business day of delay in providing said reports applied to the gross sales price payable to THC or its designee as described in paragraph 8 above. This extra percentage will be applied only on the coal sale for which the paperwork has not been provided.

      v.    All liens of record presently held by KCVI or any Halle-related entity on any assets of the Debtor shall be discharged and released.

      w.    The note secured by the mortgage on Nathan Williams' house held by THC will be deemed to have been paid in full and the mortgage held by THC will be discharged and released.

      x.    The Debtor agrees that the Proof of Claim (Claim Number 11) filed by Halle in this Chapter 11 case with respect to an Installment Promissory Note dated December 15, 2006 in the original principal amount of $125,000.00 and the Proof of Claim (Claim No. 10) filed by THC in this Chapter 11 case with respect to an Installment Promissory Note dated February 16, 2007 in the original principal amount of $160,000 are valid and allowed in full.

      y.    Neither the Williamses nor Nathan's Welding shall file an objection to Claims Nos. 10 and 11 (the "Proofs of Claims"). The Bankruptcy Court may adjudicate any

objection to the Proofs of Claims filed by persons other than the Williamses or Nathan's Welding, which persons shall not encourage or solicit any other creditor of the Debtor or party in interest to file any such objection.

z.    Nathan Williams will also be allowed to pursue his claim for $500,000.00 (Claim No. 18) filed in this Chapter 11 case without objection by the Debtor, Halle or any Halle-related entity.  All other claims of Nathan's Welding, Nathan Williams and Darrell K. Williams shall be withdrawn from this Chapter 11 case with prejudice.

aa.    The Pike Action will be settled and dismissed with prejudice and without costs on a confidential basis.

bb.    The Debtor, Nathan's Welding, and the Williamses agree to indemnify and hold harmless the Halle Defendants from any claims and causes of action released by the Settlement Agreement.

cc.    Upon completion of securing funds in good faith for necessary bonding, which shall occur no later than sixty (60) days from the date of signing of the Settlement Agreement, the Debtor shall, subject to requirements of the Commonwealth of Kentucky regarding the proper party to hold the Permits (as defined in this paragraph) take all steps necessary to have Permit Nos. 898-4283 and 898-4314 (the "Permits") currently issued to Nathan's Welding reissued to the Debtor and held and maintained in good standing by the Debtor.

dd.    In the event of a Default (as defined in the Settlement Agreement) of the Debtor that is not cured, pursuant to the cure period provided in the default provisions, by the Debtor, Alma's Operator or any of its contractors, the Permits shall be immediately transferred to a party designated by THC.  An Assignment of Permits (the "Permit Assignment") shall be entered into at the time the Settlement Agreement is entered into, which Permit Assignment shall be held in escrow by an escrow agent reasonably acceptable to the Debtor and THC, and which Permit Assignment shall be immediately released upon the occurrence of a Default that is not cured pursuant to the cure period provided in the default provision.  To the extent the Permit Assignment is not accepted by the Commonwealth of Kentucky, the parties will promptly prepare all necessary documentation to effect the transfer.

ee.    The Settlement Agreement terminates and replaces all previous agreements between the parties.

ff.    An Alma Default shall be defined as the failure of the Debtor Alma's Operator or any of its contractors, to:

(a) make or arrange for all payments required by leases, licenses, permits, contracts and other agreements related to this Settlement Agreement;

(b) pay all taxes, assessments and like charges except taxes determined or measured by the Debtor's sales revenue or net income and taxes, provided, that the Debtor shall have the right to contest (in the courts or otherwise) the validity or amount of any taxes, assessments or charges if the Debtor deems them to be unlawful, unjust, unequal or excessive, or to undertake such other steps or proceedings as the Debtor may deem reasonably necessary to secure a cancellation, reduction, readjustment or equalization thereof, but in no event shall Alma permit or allow title to the assets to be lost as the result of the nonpayment of any taxes, assessments or like charges;

(c) apply for all necessary permits, licenses or approvals;

(d) comply with all applicable laws, ensure that its operations are conducted in compliance with all applicable laws and ensure that all of its agents, employees, subcontractors and other parties engaged in connection with the performance of the operations comply with all  applicable laws;

(e) notify promptly THC or its designee of any allegations of violations of any laws or regulations governing the operation of the Debtor's business.  In the event of any such violation to timely cure or resolve such violations on behalf of both parties through performance, payment of fines and penalties or both and the cost thereof shall be borne entirely by the Debtor;

(f) prepare and file all reports or notices required for or as a result of operations;

(g) prosecute and defend, all litigation or administrative proceedings arising out of operations.  THC or its designee shall have the right to participate, at its own expense, in such litigation or administrative proceedings.  THC or its designee shall approve in advance and in writing any settlement of any such litigation or proceedings;

(h) provide insurance listed in paragraph nineteen (19) of the Settlement Term Sheet and written evidence of insurance at the request of THC or its designee. The Debtor shall have ten (10) business days from the date of any lapse in coverage to perform all steps necessary to reinstate or obtain coverage from another carrier subject to the carrier's normal approval process;

(i) perform or cause to be performed all assessment and other work, and pay all governmental fees required by law in order to maintain the unpatented mining claims, mill sites and tunnel sites operated pursuant to this agreement;

12

(j) to timely record with the appropriate county and file with the appropriate United States Agency any required affidavits, notices of intent to hold and other documents in proper form attesting to the payment of governmental fees, the performance of assessment work or intent to hold the claims and sites, in each case in sufficient detail to reflect compliance with the requirements applicable to each claim and site;

(k) to continue operations and  keep equipment in good working order; provided that failure to continue operating for less than 45 days which is caused by any breakdown of equipment shall not be deemed a default;
.
(l) keep and maintain and provide to THC basic documentation confirming coal production and coal sales and payment of government mandated charges, and all taxes  royalties; or

(m) provide THC or its designee with access to, and the right to inspect and, at its cost and expense, copy all maps, drill logs and other drilling data, core, pulps, reports, surveys, assays, analyses, production reports, operations, technical, accounting and financial records, and other business information, to the extent preserved or kept by the Debtor or the operator or one of its contractors.

gg.  The Debtor shall be provided a cure period of ten (10) business days commencing after written notice of default. except for subsection (h) and (k) for which no additional cure period shall be provided.

hh.       Halle hereby appoints the Debtor as the Operator with overall management responsibility for Operations and operational control over the Mining and sale of Products related to the Properties and Rights.

hh.       The Operator has the authority and power to perform any activity necessary, appropriate, or incidental to the Mining and sale of Products.

ii.       The Debtor hereby agrees to serve as the Operator until it resigns or withdraws, is removed as an Operator following an Event of Default as defined, or until the Product is exhausted.

jj.       In the event that the Debtor utilizes contractors or agents to perform any services to be performed by Alma, Alma shall be solely liable to said contractors and agents and THC and its affiliates shall have no liability or obligation relating thereto. Alma shall release, indemnify and hold harmless THC, Halle and any Halle-related entity and its affiliates against any and all liability, obligations and claims by Alma, Alma's Operator and all contractors and agents of Alma.

kk.     If the market price for coal goes below $60 per ton, the mines may close and go
idle until the market price of coal increases to above $60 per ton.  The time of closure
shall start when coal stops being produced.  The time period that the mines are idle shall
not exceed twelve (12) consecutive months.  Prior to shutting down any mine, Alma
and/or Alma's operator or any of its contractors shall give THC or its designee the option
to buy the coal for $60 per ton with THC picking up the difference in the cost of trucking
that Alma is paying Hampden Coal or other purchaser of Alma's production.  If THC
decides to exercise the option, the mines will continue to operate.  This option shall be at
the sole and absolute discretion of THC.

ll.     Alma agrees that in the event it commences a voluntary case or other
proceeding seeking liquidation, reorganization or other relief with respect to itself or its
assets and liabilities under any bankruptcy, insolvency or other similar law, or seeking
the appointment of a trustee, receiver, liquidator, custodian, an assignee for the benefit of
creditors, or other similar official for it or any of its property, such action shall be
commenced only in a bankruptcy or state court of competent jurisdiction in the
Commonwealth of Virginia.  In the event that any party seeks liquidation, reorganization
or other relief under any bankruptcy, insolvency or other similar law, or seeks or has
sought against Alma, the appointment of a trustee, receiver, an assignee for the benefit of
creditors, liquidator, custodian or other similar official of it or any of its property, Alma
shall file pleadings and otherwise use its best efforts to have such involuntary case or
proceeding dismissed or transferred to a bankruptcy or state court in the Commonwealth
of Virginia which may lawfully assert jurisdiction over such case or proceeding and shall
not resist the efforts of THC and its affiliates to have an involuntary proceeding or case
dismissed or, if applicable, a voluntary case transferred to a bankruptcy or state court in
the Commonwealth of Virginia which may lawfully assert jurisdiction over such case or
proceeding.

    mm.  If a dispute has not been resolved by negotiation between the parties within 10
days after delivery of a notice of negotiation, the parties shall endeavor to settle the
dispute by mediation under the CPR Mediation Procedure then currently in effect. Unless
otherwise agreed, the parties will select a mediator from the CPR Panels of Distinguished
Neutrals, and if such mediator is not available at the time a mediation is requested, such
other mediator as is mutually acceptable to all parties, to resolve their disputes for a
period of thirty (30) days. In the event that at the end of said thirty (30) day period, the
dispute is not resolved, an action may only be filed by any of the parties in a court of
competent jurisdiction in the State of Maryland.


### F. Standards Governing Motions To Approve Settlements

44.     Bankruptcy Rule 9019(a) authorizes bankruptcy courts to approve a compromise proposed by a trustee or Debtor in Possession via a motion, after notice and a hearing.  In reviewing a proposed settlement, the Court must determine that it is (1) "fair and equitable," Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S., 414, 424 (1968), and (2) in the best interests of the estate.  Depoister v. Mary M. Holloway Foundation, 36 F.3d 582, 586 (7th Cir. 1994); In re Best Products Co., Inc., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

45.     Two principles should guide the determination of whether a proposed settlement is fair and equitable.  First "[c]ompromises are favored in bankruptcy," Hicks, Muse & Co., Inc. v. Brandt (In re Healthco International, Inc., 136 F.3d 45, 50 n.5 (1st Cir. 1998); 10 L. King, Collier on Bankruptcy, ¶ 9019.01, at 9019-2 (15th ed. rev. 1997), and are "a normal part of the reorganization process."  Anderson, 390 U.S. at 424 (quoting Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 130 (1939)); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake . . ."); Michael, 183 B.R. at 232 (Bankr. D. Mont. 1995) ("[I]t is also well established that the law favors compromise"); Best Products, 16 B.R. at 50; Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) (same). Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness.  "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Planned Protective Servs., Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); c.f. Port O'Call Investment Co. v. Blair (In re

Blair), 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement).

46.     When considering this Joint Motion, the question is not whether a better settlement might have been achieved, or a better result reached if litigation is pursued, but rather whether the proposed settlement meets a minimal threshold of reasonableness.  Nellis, 165 B.R. at 123; In re Tech. for Energy Corp., 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); In re Mobile Air Drilling Co., Inc., 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985); 10 L. King, *Collier on Bankruptcy*, ¶ 9019.02, at 9019-4.  The Court should not substitute its judgment for that of a trustee concerning whether a proposed settlement is in the best interests of the bankruptcy estate. Healthco, 136 F.2d at 50 n.5.

47.     Bankruptcy courts consider the following four factors when determining whether to approve a proposed settlement:  (1) the probability of success in the litigation of the claim being compromised; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors and a proper deference to their reasonable views concerning the proposed compromise.  Jeffrey, 70 F.3d at 184; Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988) (citing, among other cases, Anderson, 390 U.S. at 424).

48.     Under Bankruptcy Rule 9019(a), this Court has broad discretion to approve or reject a proposed compromise, and orders approving settlements are reviewed for manifest abuse of discretion.  Healthco, 136 F.2d 50 n.5 (citing Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995)); In re Michael, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

49.     For the reasons set forth below, the Movant submits that the settlement embodied by the Settlement Agreement (the "Proposed Settlement") should be approved because it is supported by sound business justification, is reasonable, and in the best interests of all creditors.

50.     By this Motion, the Movant seeks entry of an Order approving the Proposed Settlement of the Adversary Proceedings.

51.     The Debtor is a party in Adversary Proceedings.

57.     The Debtor is confident that it will prevail in the litigation of the claims and causes of action asserted in the Adversary Proceedings if the matters proceed to trial. The Defendants in that proceeding have vigorously defended the case, and the parties have collectively incurred in excess of $750,000 in attorney's fees, costs and expenses.

58.     The Debtor has analyzed the issues and claims asserted by and against the Estate in the Adversary Proceedings and believes that the Proposed Settlement approximates or betters the results the Estate could reasonably anticipate if the disputes were resolved by full-blown litigation.

59.     Adversary Number 07-1025 is a very complex case and several tens or hundreds of millions of dollars is at stake. A great number of exhibits have been produced in discovery. As set forth herein above, the parties to Adv. Proc. No. 07-1025 have collectively spent and accrued three quarters of a million dollars in attorney's fees, costs and expenses, and the parties have not completed discovery or prepared the pleadings required by the Order for Trial, as amended. If the case goes to trial, these costs will continue to mount, and there will likely be appeals regardless of who prevails at trial. Absent approval of the Proposed Settlement, the litigation, including appeals, will likely take more than two (2) years to resolve. All of these factors militate in favor of entry of an Order approving the Proposed Settlement.

60.    Movant believes that the best interests of all creditors and parties in interest will be best served by entry of an Order approving the Proposed Settlement.  As set forth above, if the Proposed Settlement is approved, the Debtor will be in a position to resume full production at its currently idled mines.  Under these circumstances, the Proposed Settlement facilitates the realization of value for creditors from assets that might otherwise be used to pay hundreds of thousands of dollars of administrative expense and claims asserted against the Estate.

Conclusion

For the foregoing reasons, the Movant respectfully requests that the Court enter an Order:

1.    Finding that service of this Motion (including the Settlement Agreement) is adequate notice to all parties in interest under the circumstances of the Chapter 11 case;

2.    Sustaining this Joint Motion;

3.    Approving the Settlement Agreement in its entirety;

4.    Authorizing and directing the signatories to the Settlement Agreement to consummate the settlement embodied by the Settlement Agreement;

5.    Granting the Movant such other and further relief as the Court deems just and proper.

**NOTICE**

**Notice is hereby given that the foregoing Motion shall be brought on for a hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, 3rd Floor, Lexington, Kentucky on Monday, January 10, 2007, at 2:15 p.m. (Eastern Standard Time), or as soon thereafter as counsel may be heard.**

## SETTLEMENT AGREEMENT

1.     This Settlement Agreement ("this Agreement") is entered into this 14th day of December, 2007, between and among the following parties:

Kentucky Coal Venture I LLC ("KCVI"), Kentucky Coal Venture II LLC ("KCVII"), THC Kentucky Coal Venture I LLC ("THC"), West Virginia Coal Venture I LLC ("WVCV"), Warren E. Halle ("WEH"), all Halle-related entities (any entity that WEH has any interest in), KWV Operations LLC ("KWV"), Kenneth Adamson ("Adamson"), collectively referred to herein as "Halle"; and Darrell K. Williams ("DKW"), Nathan J. Williams ("NJW"), collectively referred to herein as "Williams", Alma Energy, LLC ("Alma") and Nathan's Welding, LLC ("Nathan's Welding") (collectively, the "Parties"; individually, a "Party")

2.     This Agreement relates to the following:

a.     *Kentucky Coal Venture I, LLC v. Darrell Williams, et al.*, Case No.: 07 CV 1339 (D. Md.)

b.     *In re Alma Energy, LLC*, Chapter 11, Case No. 07-70370 and Adversary Proceeding Nos. 07-07025 and 07-07032 (Bankr. E.D. Ky); and

c.     The proceeding currently pending in Pike Circuit Court, *THC Kentucky Coal Venture I LLC v. Nathan Williams,* Case No. 07-C1-00910.

d.     And all other matters in any way related to Halle as a Party and Williams, Nathan's Welding, and/or Alma as Party/Parties.

3.      The Parties enter into this Agreement to resolve any and all disputes that have arisen between them and to avoid the burden, expense and uncertainties of litigation. In entering into this Agreement, the Parties do not admit, and specifically deny, that they breached any contract, violated or breached any duty, engaged in any misrepresentation or deception or violated any federal, state, or local law, or any regulations or guidelines promulgated pursuant to law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by any of the Parties of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, neither this Agreement nor any of its terms, Exhibits or related judicial orders or findings shall be offered or received as evidence or otherwise in any action or proceeding to establish any liability, admission, fact or thing on the part of or against any Party to this Agreement.

4.     Halle is relieved of any and all obligations, if any ever existed, to provide any monetary or other investment capital to KCVI and/or Alma. Alma hereby acknowledges that Halle is neither its partner, joint venturer or fiduciary.

5.     Alma shall be fully responsible for any and all past, present, or future costs of its operations and shall not look to Halle for payment of any money and/or consideration of any kind.

1



6.    Any claims against Alma whether past. present, or future shall be the sole responsibility of Alma.

7.    This Agreement is a Mutual Release of all claims and causes of action by. between. and among the following: Williams; Alma:  Nathan's Welding:  WEH: KCVI: THC: KCVII; WVCV: KWV: Adamson: and all other entities controlled by. owned in part by or associated with Halle.   The claims mutually released include any and all claims (including, but not limited to any claims, defenses or assertions of rescission, voidness, voidability. illegality, offset or the like), demands, actions. causes of action, rights. offsets. restitution, damages, lawsuits, liens, costs, losses, expenses or liabilities of any kind whatsoever, for any relief or remedy whatsoever. including monetary. injunctive or declaratory relief, or for reimbursement of attorneys' fees. costs or expenses, whether known or unknown, alleged or not alleged in any of the four (4) lawsuits (the "Actions") and/or Alma's Chapter 11 case. Case No. 07-70370 (the "Chapter 11 Case") referenced above in paragraph 2. suspected or unsuspected. contingent or vested, which any Party to this Agreement has had, now has, or may have in the future against any other Party which arose out of the events, acts. or omissions that were alleged or that could have been alleged in the Actions. The within Mutual Release shall be effective immediately upon entry of an Order by United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court") approving this Agreement. The within Mutual Release shall not be applicable to any claim or cause of action related to breaches of this Agreement after the Bankruptcy Court enters an Order Approving the same.

8.    All claims against Billy Shelton and James P. Pruitt, Jr. by any Party are hereby released by the Parties.

9.    The within mutual releases apply to all owners, agents. officers. directors. attorneys, employees and members of any released or releasing party.

10.   Nothing in this Agreement shall be construed to release or be intended to be a release of any claims or causes of action that any Party to this Agreement may have against any of the following: Joe Street ("Street"). J.B. Roulett ("Roulett"). West River Conveyors and Machinery Company, any entity owned or controlled by Street and/or Roulette. or the Grundy National Bank.

11.   Alma, the Williams. and Nathan's Welding hereby release all claims and causes of action that they may have relating to the Glen Alum property. the Logan property. or any other properties in which  Halle has an ownership interest; provided. however. that this release shall have no effect on any claims which such releasing parties may obtain or acquire as to or against such properties after the date hereof.

12.   Alma is solely responsible for resolving. paying and/or discharging all claims of the creditors in the Chapter 11 Case.

13.   KCVI will withdraw the Proof of Claims (Claim No. 1-1, as amended by Claim No. 1-2) that it filed in the Chapter 11 Case, except that THC or its designee is hereby given title (free and clear of all liens, claims and encumbrances) to the batteries: one D-9 dozer; one DB 25 and one DB 30 rock truck. and one scoop. all of which personal property is currently located at Glen Alum. Alma shall take

2



all reasonable steps to transfer legal title to said items to THC or its designee. Promptly after this Agreement is executed by all Parties, Alma shall file a motion in the Chapter 11 Case to sell, convey and transfer (on the date of approval of this Agreement by the Bankruptcy Court) the items referred to in the first sentence of this paragraph free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. 363(f).

14.    Alma shall take all reasonable steps to determine the allowability and validity of all claims filed in the Chapter 11 Case.

15.    KCVI shall assign to THC all right, title and interest in and to all claims and/or payments relating to the matters discussed herein and KCVI shall have no further interest in and to any claims, benefits or rights relating to any agreements previously entered into with Alma or its affiliates.

16.    THC or its designee will also be given title to one 980-B loader and one 988-A loader currently located at Netley Mines free and clear of all liens, claims and encumbrances. Promptly after this Agreement is executed by all Parties, Alma shall file a motion in the Chapter 11 Case to sell, convey and transfer (on the date of approval of this Agreement by the Bankruptcy Court) the two (2) loaders referred to in the preceding sentence of this paragraph free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. 363(f).

17.    NJW or his designee shall be provided title to the following equipment from THC or its designee: one of the DB rock trucks (at THC's choice), one scoop, the 980-B loader, the 988-A loader. THC or its designee will retain all other equipment in which KCVI has an interest.

18.    THC or its designee will be paid a royalty of seven percent (7.0%) of the gross sales price per ton of coal up to a price of $65.00 per ton (which price shall be the price actually paid by the purchaser of the coal and shall not be reduced by any additional costs or fees including, without limitation, trucking and all other costs of Alma or any operator or one of its contractors engaged by Alma to perform mining services at the Kentucky mines ("Alma's Operator"), including, but not limited to, William Detherage and BSD1, LLC); provided, however that in no event shall the minimum royalty paid to THC or its designee be less than $4.20 per ton.

19.    THC or its designee will receive the royalty payment referred to in paragraph 18 above before all other obligations and debts of Alma are paid or satisfied. If the gross sales price of coal exceeds $65.00 per ton, THC or its designee will receive $4.55 plus an additional $0.50 for every additional $1.00 increase in sales price in excess of $65.00 per ton, mined from the existing Kentucky properties as illustrated on the following schedule:

| PRICE | 7% | % | ESCALATOR | PAYMENT |
|-------|------|---|-----------|---------|
| $65 | $4.55 | 7 | | $4.55 |
| $70 | $4.55 | | $2.50 | $7.05 |
| $75 | $4.55 | | $5.00 | $9.55 |
| $80 | $4.55 | | $7.50 | $12.05 |
| $85 | $4.55 | | $10.00 | $14.55 |
| $90 | $4.55 | | $12.50 | $17.05 |



| $95 | $4.55 | | $15.00 | $19.55 |
|------|-------|--|--------|--------|
| $100 | $4.55 | | $17.50 | $22.05 |
| $105 | $4.55 | | $20.00 | $24.55 |
| $110 | $4.55 | | $22.50 | $27.05 |
| $115 | $4.55 | | $25.00 | $29.55 |
| $120 | $4.55 | | $27.50 | $32.05 |
| $125 | $4.55 | | $30.00 | $34.55 |

20.    If Alma washes its coal at Glen Alum, however, for the purpose of determining the royalty payment, the price charged to wash the coal will be subtracted from the ultimate gross sales price and the royalty will be calculated on the difference only. By way of illustration, if Alma is charged $6.00 per clean ton to wash its coal at Glen Alum, and then sells the washed coal for $81.00, the gross sales price will be deemed to be $75.00 for the purpose of calculating the royalty and the royalty will be $9.55 per ton. The actual cost of washing the coal will be agreed upon by Alma and Glen Alum prior to the coal being washed. In addition, it is understood that this arrangement is neither binding upon Alma to ship its coal to Glen Alum nor binding upon Glen Alum to accept and wash Alma's coal. No claim or cause of action will accrue in favor of Alma if Glen Alum declines to wash any of Alma's coal for any reason whatsoever. Alma will be responsible for arranging any factoring of its coal. Neither Halle nor Glen Alum will factor Alma's coal.

21.    All coal sales proceeds will be deposited with a mutually agreed upon escrow agent who will be responsible for the payments set forth herein.

22.    Alma and/or Alma's Operator or one of its contractors shall provide to THC or its designee basic documentation confirming coal production and coal sales on the next business day, and payment of all government mandated charges, all taxes and all royalties within ten (10) calendar days of payment.

23.    Insurance will be provided and maintained by Alma or Alma's Operator or one of its contractors in the amount of $1,000,000 per incident/$2,000,000.00 per occurrence primary Commercial General Liability coverage and $10,000,000.00 in excess umbrella liability coverage. THC or its designee will be named as an additional insured. Said insurance shall be in force at the time this Agreement is approved by an Order of the Bankruptcy Court.

24.    Alma's failure to provide required production reports by the next business day will result in a payment due to THC or its designee in an amount equal to an additional 10% of the gross sales price for each business day of delay in providing said reports applied to the gross sales price payable to THC or its designee as described in paragraph nineteen (19) above. This extra percentage will be applied only on the coal sale for which the paperwork has not been provided.

25.    All liens of record presently held by KCVI or any Halle-related entity on any assets of Alma shall be discharged and released.

26.    The note secured by the mortgage on NJW's house held by THC will be deemed to have been paid in full and the mortgage held by THC will be discharged and released.

4

27.    Alma agrees that the Proof of Claim (Claim Number 11) filed by WEH in the Chapter 11 Case with respect to an Installment Promissory Note dated December 15, 2006 in the original principal amount of $125,000.00 and the Proof of Claim (Claim No. 10) filed by THC in the Chapter 11 Case with respect to an Installment Promissory Note dated February 16, 2007 in the original principal amount of $160,000 are valid and allowed in full. The Mutual Release set forth herein shall have no force or effect on the Proofs of Claims referred to in this paragraph of this Agreement.

28.    No party to this Agreement shall file an objection to Claims Nos. 10 and 11 (the "Proofs of Claims"). The Bankruptcy Court may adjudicate any objection to the Proofs of Claims filed by persons other than Alma. Williams or Nathan's Welding. which persons shall not encourage or solicit any other creditor of Alma or party in interest to file any such objection.

29.    NJW will also be allowed to pursue his claim for $500,000.00 (Claim No. 18) filed in the Chapter 11 Case without objection by Alma. Halle or any Halle-related entity. All other claims of Nathan's Welding and Williams shall be withdrawn from the Chapter 11 Case with prejudice.

30.    The lawsuit currently pending in the Pike County Court, Case No. 07-CI-00910 (the "Pike Action"). will be settled and dismissed with prejudice within thirty (30) days of the entry by the Bankruptcy Court of an Order approving this Agreement and without costs on a confidential basis.

31.    Alma has the right to inform the Bankruptcy Court of the agreement of the Parties to dismiss the Pike Action. but shall refrain from disclosing the consideration paid unless the Bankruptcy Court requires such disclosure in connection with the motion to approve this Agreement.

32.    The material terms of this Agreement shall be submitted to the Bankruptcy Court for approval. In the event that the Bankruptcy Court does not approve such agreement, or this Agreement is objected to by creditors, the Parties reserve the right to modify the same in a manner reasonably acceptable to each Party.

33.    Promptly after all Parties execute and deliver this Agreement. Alma shall file in the Chapter 11 Case a motion to approve such agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and take all steps reasonably necessary to obtain entry of a final Order by the Bankruptcy Court approving such agreement. Upon entry of an Order by the Bankruptcy Court approving this Agreement. legal counsel for Halle shall file the dismissal stipulations with respect to Adv. Proc. Nos. 07-7025 and 07-7032 included in Exhibit 1 hereto. and counsel for the Parties to the Pike Action shall execute and file a stipulation of dismissal with prejudice and without costs in such action.

34.    Alma, Nathan's Welding and the Williams agree to indemnify and hold Halle harmless from any claims and causes of action released by this Agreement.

35.    Upon completion of securing of the funds necessary for bonding. which shall occur no later than sixty (60) days from the date of this Agreement. Alma shall. subject to the requirements of the Commonwealth of Kentucky regarding the proper party to hold the Permits (as defined in this

5



paragraph). take all steps necessary to have Permit Nos. 898-4283 and 898-4314 (the "Permits")
currently issued to Nathan's Welding reissued to Alma and held and maintained in good standing by
Alma.

36.    In the event of an Alma Default (as defined herein) that is not cured. pursuant to the cure
period provided in the default provisions, by Alma. Alma's Operator or any of its contractors. the
Permits shall be immediately transferred to a party designated by THC. An Assignment of Permits
("Permit Assignment") shall be entered into at the time this Agreement is entered into. which Permit
Assignment shall be held in escrow by an escrow agent reasonably acceptable to Alma and THC, and
which Permit Assignment shall be immediately released upon the occurrence of an Alma Default that
is not cured within the cure period provided in the default provision. Alma's attorney shall prepare
said Permit Assignment for the approval of Halle and once approved by Halle. Alma's attorney shall
attach said Permit Assignment to this Agreement as Exhibit 2. To the extent the Permit Assignment is
not accepted by the Commonwealth of Kentucky. the parties will promptly prepare all necessary
documentation to effect the transfer.

37.    This Agreement terminates and replaces all previous oral and/or written agreements
between the Parties.

38.    An Alma Default shall be defined as the failure of Alma. Alma's Operator or any of its
contractors. to:

(a) make or arrange for all payments required by leases, licenses, permits. contracts and other
agreements related to this Agreement:

(b) pay all taxes, assessments and like charges except taxes determined or measured by a Alma's sales
revenue or net income and taxes, provided. that Alma shall have the right to contest (in the courts or
otherwise) the validity or amount of any taxes. assessments or charges if Alma deems them to be
unlawful. unjust, unequal or excessive. or to undertake such other steps or proceedings as Alma may
deem reasonably necessary to secure a cancellation, reduction, readjustment or equalization thereof.
but in no event shall Alma permit or allow title to the assets to be lost as the result of the nonpayment
of any taxes. assessments or like charges:

(c) apply for all necessary permits. licenses or approvals;

(d) comply with all applicable laws. ensure that its operations are conducted in compliance with all
applicable laws and ensure that all of its agents, employees, subcontractors and other parties engaged
in connection with the performance of the operations comply with all applicable laws:

(e) notify promptly THC or its designee of any allegations of violations of any laws or regulations
governing the operation of Alma's business. In the event of any such violation or the failure to timely
cure or resolve such violations on behalf of both Parties through performance. payment of fines and
penalties or both and the cost thereof shall be borne entirely by Alma:

(f) prepare and file all reports or notices required for or as a result of operations:

(g) prosecute and defend, all litigation or administrative proceedings arising out of operations. THC or

6



its designee shall have the right to participate, at its own expense, in such litigation or administrative proceedings. THC or its designee shall approve in advance and in writing any settlement of any such litigation or proceedings:

(h) provide insurance listed in paragraph twenty-three (23) of this Agreement and written evidence of insurance at the request of THC or its designee. Alma shall have ten (10) business days from the date of any lapse in coverage to perform all steps necessary to reinstate or obtain coverage from another carrier subject to the carrier's normal approval process;

(i) perform or cause to be performed all assessment and other work, and pay all governmental fees required by law in order to maintain the unpatented mining claims, mill sites and tunnel sites operated pursuant to this Agreement:

(j) to timely record with the appropriate State or County and file with the appropriate United States Agency any required affidavits, notices of intent to hold and other documents in proper form attesting to the payment of governmental fees, the performance of assessment work or intent to hold the claims and sites, in each case in sufficient detail to reflect compliance with the requirements applicable to each claim and site;

(k) to continue operations and keep equipment in good working order: provided that the failure to continue operating for less than forty-five (45) days which is caused by any breakdown of equipment shall not be deemed a default:

(l) keep and maintain and provide to THC or its designee basic documentation confirming coal production and coal sales and payment of government mandated charges, and all taxes royalties: or

(m) provide THC or its designee with access to, and the right to inspect and, at its cost and expense, copy all maps, drill logs and other drilling data, core, pulps, reports, surveys, assays, analyses, production reports, operations, technical, accounting and financial records, and other business information, to the extent preserved or kept by Alma or Alma's Operator or one of its contractors.

39.     Alma shall be provided a cure period of ten (10) business days commencing after written notice of default except for subsection (h) and (k) for which no additional cure period shall be provided. A cure that is provided for under a confirmed plan of reorganization in the Chapter 11 Case shall be deemed timely.

40.     Halle hereby acknowledges and agrees that Alma will be the Operator with overall management responsibility for Operations and operational control over the Mining and sale of Products related to the Right Fork I; Right Fork II (also known as Little Ty); and Netley Properties.

41.     The Operator has the authority and power to perform any activity necessary, appropriate, or incidental to the Mining and sale of Products.

42.     Alma hereby agrees to serve as the Operator until it resigns or withdraws, is removed as an Operator following an Alma Default as defined herein, or until the Product is exhausted or not economical to extract for a period in excess of 12 months .

43.     In the event that Alma utilizes contractors or agents to perform any services to be performed by Alma, Alma shall be solely liable to said contractors and agents and Halle and its



affiliates shall have no liability or obligation relating thereto. Alma shall release, indemnify and hold harmless Halle and any Halle-related entity and its affiliates against any and all liability, obligations and claims by Alma, Alma's Operator and all contractors and agents of Alma.

44.     If the market price for coal goes below $60 per ton, the mines may close and go idle until the market price of coal increases to above $60 per ton. The time of closure shall start when coal stops being produced. The time period that the mines are idle shall not exceed twelve (12) consecutive months. Prior to shutting down any mine, Alma and/or Alma's Operator or any of its contractors shall give THC or its designee the option to buy the coal for $60 per ton with THC picking up the difference in the cost of trucking that Alma would pay to Hampden Coal. If THC decides to exercise the option, the mines will continue to operate. This option shall be at the sole and absolute discretion of THC or its designee.

45.     Alma agrees that in the event it commences a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its assets and liabilities under any bankruptcy, insolvency or other similar law, or seeking the appointment of a trustee, receiver, liquidator, custodian, an assignee for the benefit of creditors, or other similar official for it or any of its property, regardless of whether such case or proceeding is commenced after the Chapter 11 Case (07-70370) is dismissed or closed or Alma emerges from such case as a reorganized debtor, such action shall be commenced only in a bankruptcy or state court of competent jurisdiction in the Commonwealth of Virginia. In the event that any party seeks liquidation, reorganization or other relief under any bankruptcy, insolvency or other similar law, or seeks or has sought against Alma, the appointment of a trustee, receiver, an assignee for the benefit of creditors, liquidator, custodian or other similar official of it or any of its property, Alma shall file pleadings and otherwise use its best efforts to have such involuntary case or proceeding dismissed or transferred to a bankruptcy or state court in the Commonwealth of Virginia which may lawfully assert jurisdiction over such case or proceeding and shall not resist the efforts of Halle and its affiliates to have an involuntary proceeding or case dismissed or, if applicable, a voluntary case transferred to a bankruptcy or state court in the Commonwealth of Virginia which may lawfully assert jurisdiction over such case or proceeding. The terms of this Agreement will be incorporated by reference in any plan proposed by the Alma in the Chapter 11 Case.

46.     If a dispute under this Agreement has not been resolved by negotiation between the Parties within ten (10) days after delivery of a written notice or demand for negotiation, the Parties shall endeavor to settle the dispute by mediation under the CPR Mediation Procedure then currently in effect. Unless otherwise agreed, the Parties will select a mediator from the CPR Panels of Distinguished Neutrals, and if such mediator is not available at the time a mediation is requested, such other mediator as is mutually acceptable to all Parties, to resolve their disputes for a period of thirty (30) days. In the event that at the end of said thirty (30) day period, the dispute is not resolved, an action may only be filed by any of the Parties in a court of competent jurisdiction in the State of Maryland.

47.     This Agreement may be executed in multiple counterparts, each one of which shall be deemed an original, but all of which shall be considered together as one and the same instrument. Further, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart. Execution by a Party of a signature page hereto shall constitute due



execution and shall create a valid, binding obligation of the Party so signing. It shall not be necessary or required that the signatures of all Parties appear on a single signature page hereto.

48.    A facsimile or imaged signature on this Agreement shall be deemed to be an original signature for all purposes. In the event that a suit or a proceeding is brought to enforce the terms of this Agreement or any document executed in connection herewith, the plaintiff or movant shall not be required to produce or introduce into evidence a copy of this Agreement bearing original inked signatures of the Parties. A facsimile or imaged signature on this Agreement shall suffice in any legal proceeding or action to enforce the terms hereof.

49.    The failure of a Party to insist upon strict performance of any provision of this Agreement or to exercise any right, power, or remedy upon a breach hereof shall not constitute a waiver of any provision of this Agreement or limit such Party's right thereafter to enforce any provision or exercise any right.

50.    No modification of this Agreement shall be valid unless made in writing and duly executed by all Parties.

51.    This Agreement contains the entire understanding of the Parties and supersedes all prior written and oral agreements and understandings between the Parties. This Agreement shall be binding upon and inure to the benefit of the respective successors and permitted assigns of the Parties unless otherwise provided herein.

52.    All notices hereunder shall be in writing and shall be served on:

The Halle Companies
Attn: Stephen N. Fleischman, Vice President
2900 Linden Lane
Suite 300
Silver Spring, MD 20910

Alma Energy. LLC
59 Davis Branch
Stone, KY 41657

James P. Pruitt, Esquire
P.O. Box 339
Pikeville, KY 41502

Paul Stewart Snyder, Esquire
PO Box 1067
Ashland, KY 41105

Roger C. Simmons, Esquire
630-B West Patrick Street
P. O. Box 430
Frederick, MD 21705

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

Warren E. Halle

Warren E. Halle

Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____

Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____

Darrell K. Williams

_____

Nathan J. Williams

_____

Nathan's Welding, LLC

_____

Alma Energy, LLC
By:  Steven Singleton, President

_____

Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____

E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____

Kenneth Adamson

10

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:


____  _____  ___  __
Warren E. Halle

Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

*Roger C. Simmons*

Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC


__  __  _  .
Darrell K. Williams


__  _____  __  _
Nathan L. Williams


__  .  _  __  _
Nathan's Welding, LLC


__  __  _  __
Alma Energy, LLC
By  Steven Singleton, President


__  _  ____  __
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC


__  _  ____  _
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC


__  __  ____  _
Kenneth Adamson

Dec 16 07 11:07p        almaenergy           1-304-574-6002            p.1

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren F. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren F. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By: Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren E. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By: Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren E. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By:  Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

## Exhibit 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

ALMA ENERGY, LLC

       DEBTOR

CASE NO. 07-70370
CHAPTER 11

---

ALMA ENERGY. LLC

v.

KENTUCKY COAL VENTURE I, LLC,
*et al.*

PLAINTIFF

ADV. PROC. NO. 07-07025

DEFENDANTS

---

### STIPULATION OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS PURSUANT TO RULE 41(a)(1)(ii) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. made applicable to this Adversary Proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure, Plaintiff Alma Energy, LLC ("Plaintiff") and Defendants Kentucky Coal Venture I, LLC, Kentucky Coal Venture II. LLC, THC Kentucky Coal Venture I. LLC, West Virginia Coal Venture I, LLC, KWV Operations, LLC, Warren E. Halle, Ken Adamson and Tony Gannacone III ("Defendants"), by their respective undersigned counsel, hereby stipulate and agree that this Adversary Proceeding is dismissed with prejudice and without costs as against Defendants Kentucky Coal Venture I, LLC, Kentucky Coal Venture II, LLC, THC Kentucky Coal Venture I. LLC, West Virginia Coal Venture I, LLC, KWV Operations. LLC, Warren E. Halle and Ken Adamson.  This Adversary Proceeding is not dismissed as to Defendant Tony Gannacone, III.



Plaintiff and Defendants waive all rights of appeal with respect to the entry of this dismissal

stipulation.

/s/ Paul Stewart Snyder, Esq.
P.O. Box 1067
Ashland, KY  41105
Telephone: (606) 325-5555
E-mail:    ps@ws5.com
COUNSEL FOR PLAINTIFF
ALMA ENERGY, LLC


WISE DELCOTTO PLLC


/s/ Michael J. Gartland, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
E-mail:    mgartland@wisedel.com

-and-

/s/ Roger C. Simmons, Esq.
*Admitted pro hac vice*
Gordon & Simmons, LLC
603-B West Patrick Street
Frederick, MD  21701
Telephone: (301) 662-9122
Facsimile: (301) 698-0392
E-mail:    rsimmons@gordonsimmons.com
COUNSEL FOR DEFENDANTS
KENTUCKY COAL VENTURE I, LLC
KENTUCKY COAL VENTURE II, LLC
THC KENTUCKY COAL VENTURE I, LLC
WEST VIRGINIA COAL VENTURE I, LLC
KWV OPERATIONS, LLC
WARREN E. HALLE
and KEN ADAMSON

2



/s/ Ellen Arvin Kennedy, Esq.
Fowler, Measle & Bell PLLC
300 W. Vine Street. Suite 600
Lexington, KY 40507-1660
Telephone: (859) 252-6700
Facsimile: (859) 255-3735
E-mail:    eakennedy@fowlerlaw.com
COUNSEL FOR DEFENDANT
TONY GANNACONE. III

Z:\Clients\Kentucky Coal Venture\Pleadings AP 07-7025\Stipulation of Dismissal.doc

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

ALMA ENERGY, LLC

      DEBTOR

CASE NO. 07-70370
CHAPTER 11

---

ALMA ENERGY, LLC

v.

KENTUCKY COAL VENTURE I, LLC,
*et al.*

PLAINTIFF

ADV. PROC. NO. 07-07032

DEFENDANTS

---

## STIPULATION OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS PURSUANT TO RULE 41(a)(1)(ii) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure, Plaintiff Alma Energy, LLC ("Plaintiff") and Defendants Kentucky Coal Venture I, LLC and Warren E. Halle ("Defendants"), by their respective undersigned counsel, hereby stipulate and agree that this Adversary Proceeding is dismissed with prejudice and without costs. Plaintiff and Defendants waive all rights of appeal with respect to the entry of this dismissal stipulation.

/s/ Paul Stewart Snyder, Esq.
P.O. Box 1067
Ashland, KY 41105
Telephone: (606) 325-5555
E-mail:     ps@ws5.com
COUNSEL FOR PLAINTIFF
ALMA ENERGY, LLC

WISE DELCOTTO PLLC


/s/ Michael J. Gartland, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
E-mail:    mgartland@wisedel.com

-and-

/s/ Roger C. Simmons, Esq.
*Admitted pro hac vice*
Gordon & Simmons, LLC
603-B West Patrick Street
Frederick, MD 21701
Telephone: (301) 662-9122
Facsimile: (301) 698-0392
E-mail:    rsimmons@gordonsimmons.com
COUNSEL FOR DEFENDANTS
KENTUCKY COAL VENTURE I, LLC
KENTUCKY COAL VENTURE II, LLC
THC KENTUCKY COAL VENTURE I, LLC
WEST VIRGINIA COAL VENTURE I, LLC
KWV OPERATIONS, LLC
WARREN E. HALLE
and KEN ADAMSON


Z:\Clients\Kentucky Coal Venture\Pleadings AP 07-7032\Stipulation of Dismissal.doc

2



## Exhibit 2

### Permit Assignment

To be provided per paragraph 36 of this Agreement.



Respectfully Submitted,

/s/ Paul Stewart Snyder
COUNSEL FOR THE DEBTOR
Paul Stewart Snyder, Atty.
1544 Winchester Ave Ste 820
PO Box 1067
Ashland, Ky 41105-1067
ps@ws5.com
off 606 325-5555
fax 606 324-1665
cell 606 324-2866

The foregoing has been served
by ecf noticing on all parties
who receive such notice and on
all other parties by mail this the
20th day of December, 2007,
parties receiving notice include:

**James W. Gardner**
401 W Main St #314 Victorian Square
Lexington, KY 40507-1646
JWG@HWGSG.com

**J Alec Mackenzie**
Office of Legal Services
#2 Hudson Hollow Road
Frankfort, KY 40601
Alec.Mackenzie@ky.gov

**Ellen Arvin Kennedy**
300 W Vine St #600
Lexington, KY 40507
bankruptcy@fmblaw.com

**John Thomas Hamilton**
201 W Short St
Lexington, KY 40507-1231
jhamilton@gmalaw.com

**Michael J. Gartland**
200 N. Upper St.
Lexington, KY 40507
(859) 231-5800
gartlandbk@wisedel.com

**Mary Elisabeth Naumann**
PO Box 2150
Lexington, KY 40588-9945
kybankruptcy@jacksonkelly.com

**Sarah C. McCarty**
707 Virginia Street E., 8th Flr
Charleston, WV 25301

**Arthur M Standish**
PO Box 1588
Charleston, WV 25326-1588
standiam@steptoe-johnson.com

**Erica N. Galyon**
250 W. Main ST.
2300 Lexington Financial Center
Lexington, KY 40507
egalyon@stites.com

**Philip Hanrahan**
100 E. Vine St. #500
Lexington, KY 40507
philip.l.hanrahan@usdoj.gov

**Rachelle C. Williams**
100 E. Vine St. #500
Lexington, KY 40507
rachelle.c.williams@usdoj.gov

Label Matrix for local noticing
0643-7
Case 07-70370-wsh
Eastern District of Kentucky
Pikeville
Sun Dec  2 22:26:14 EST 2007

Alma Energy LLC
59 Davis Branch
Stone, KY 41567-7032

BSD1, LLC
C/O James W. Gardner, Esq.
401 W. Main Street, Suite 314
Lexington, KY 40507-1646

Consol Capital, LLC
c/o Fowler Measle & Bell PLLC
300 West Vine Street
Suite 300
Lexington, KY 40507-1807

Netley Branch Coal Co
Gess Mattingly & Atchison, P.S.C.
c/o John Hamilton
201  West Short Street
Lexington, KY 40507-1269

Pocahontas Land Corporation
Steptoe & Johnson PLLC
Post Office Box 1588
Charleston, WV 25326-1588

West River Machinery
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, KY 40507-1758

Pikeville Office
US Bankruptcy Court
100 E Vine St #200
Lexington, KY 40507-1451

AFR REPAIR
11945 N BIG CREEK RD
HAITFIELD KY 41514-9010

AMERICAN ELECTRIC POWER
PO BOX 2021
ROANOKE, VA 24022-2121

AMERICAN ELECTRIC POWER COMPANY
P.O. BOX 24410
CANTON, OH 44701-4410

APOGEE ENVIRONMENTAL CONSULTANTS INC
C/O JOEL BEVERLY
PO BOX 338
ERMINE KY 41815-0338

BELL SOUTH
P.O. BOX 1857
ALPHARETTA, GA 30023-1857

BLACK GOLD
410 WINTERHAM DRIVE
ABINGTON, VA 24211-3802

COAL TRADE LLC
C/O THOMAS W DIETRICH
701 MARKET ST STE 600
ST LOUIS MO 63101-1826

(p)CONSOL CAPITAL LLC
1200 N FEDERAL HIGHWAY
STE 200
BOCA RATON FL 33432-2813

DALE FOARD
1606 MORNING BROOK COURT
FOREST HILLS, MARYLAND 21050-2630

DALE FORD
3603 GWYNN OAK AVE.
BALTIMORE, MD 21207-7632

DARRELL WILLIAMS
P.O. BOX 895
BELFRY, KY 41514-0895

DETROIT EDISON ENERGY
414 S. MAIN STREET, STE 600
ANN ARBOR, MI 48104-2398

ENVIRONMENTAL DESIGN
43 VILLAGE STREET
PIKEVILLE, KY 41501-3266

HAPPY TRUCKING
P.O. BOX 71
MCCARR, KY 41544-0071

HIGHLANDS MACHINERY
96 LAMPLIGHTER STREET
OAK HILL, VA 25901-9512

INFINITY DEVELOPMENT GROUP
500 GULF STREAM BLVD.
DEL RAY BEACH, FL 33483-6144

INTERNAL REVENUE SERVICE
600 DR M L KING JR PL STE 651
STOP MDP 510
LOUISVILLE KY 40202-2276

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

J.B. ROULETT
C/O STITES & HARBISON, PLLC
250 WEST MAIN STREET, SUITE 2300
LEXINGTON, KY 40507-1735

JB ROULETT
PO BOX 497
VANSANT VA 24656-0497

JERRY ROULETT
HC 67, BOX 75
VANSANT, VA 24656

(c)JOE GARY STREET
2753 DRY FORK RD
VANSANT VA  24656-9405

JOE STREET
HC 67, BOX 75
VANSANT, VA 24656

K&W METALS INC
1803 STRATTON FORK RD
CANADA KY 41519-8327

KENTUCKY COAL VENTURE I, LLC
C/O MICHAEL J. GARTLAND, ESQ.
WISE DELCOTTO PLLC
200 NORTH UPPER STREET
LEXINGTON, KY 40507-1017

KENTUCKY COAL VENTURE I, LLC
C/O WARREN HALLE
2900 LINDIN LANE
SILVER SPRINGS, MD 20910-1265

KENTUCKY DEPARTMENT OF REVENUE
LEGAL BRANCH-BANKRUPTCY SECTION
ATTN: LEANNE WARREN
P. O. BOX 5222
FRANKFORT, KY 40602-5222

KENTUCKY STATE TREASURER
DEPARTMENT OF REVENUE
FRANKFORT, KY 40620-0001

LITTLE TY
500 CALLAWAY ROAD
RANSOM, KY 41558

LITTLE TY COAL COMPANY, INC.
PO BOX 362
LENORE WV 25676-0362

MARTIN COUNTY COAL
P.O. BOX 830
BELFRY, KY 41514-0830

MINE POWER SERVICES
P.O. BOX 578
BEAVER, WV 25813-0578

NATHAN WILLIAMS
59 DAVIS BRANCH ROAD
STONE, KY 41567-7032

NATHAN'S WELDING, LLC
59 DAVIS BRANCH ROAD
STONE, KY 41567-7032

NETLEY BRANCH COAL COMPANY, INC.
59 DAVIS BRANCH
STONE KY 41567-7032

NEW HAUL CONTRACTING
P.O. BOX 87
BORDERLAND, WV 25665-0087

OFFICE OF SURFACE MINING
2675 REGENCY ROAD
LEXINGTON, KY 40503-2922

OFFICE OF SURFACE MINING
DIV OF COMPLIANCE MANAGEMENT
PO BOX 360095M
PITTSBURGH PA 15251

PEABODY COAL TRADE
P.O. BOX 68
KENOVA, WV 25530-0068

PIKE TECH SERVICES
183 TOLLAGE ROAD
PIKEVILLE, KY 41501-3326

POCAHONTAS DEVELOPMENT CORPORATION
STEVE HOPTA
P O BOX 1517
BLUEFIELD, WV 24701-1517

POCAHONTAS LAND CORPORATION
ARTHUR M. STANDISH, ESQ.
P. O. BOX 1588
CHARLESTON, WV 25326-1588

POCAHONTAS LAND MINERAL ROYALTIES
P.O. BOX 1517
BLUEFIELD, WV 24701-1517

POND CREEK TRUCKING
P.O. BOX 1020
BELFRY, KY 41514-1020

RAMA DEVELOPMENT
RT. 3, BOX 706
DELBARTON, WV 25670-9666

ROGER'S PETROLEUM
P.O. BOX 162
PIKEVILLE, KY 41502-0162

ROGERS PETROLEUM SERVICES INC
C/O COMBS & COMBS PSC
PO DRAWER 31
PIKEVILLE KY 41502-0031

ROGERS PETROLEUM SERVICES, INC.
P. O. BOX 162
PIKEVILLE, KENTUCKY 41502-0162

S&S WATER
4767 HIGHWAY 580
OIL SPRINGS, KY 41238

SHARON FRANCIS
11945 N BIG CREEK RD
HATFIELD KY 41514-9010

THC COAL VENTURE LLC
2900 LINDEN LANE
SILVER SPRING MD 20910-1265

THE EQUIPMENT
LENORE WV 25676

TKT TRUCKING
P.O. BOX 250
CHESAPEAKE, OH 45619-0250

TONAWANDA COKE CORPORATION
BOX 5007
TONAWANDA, NY 14151-5007

U.S. Trustee
100 E Vine St #500
Lexington, KY 40507-1441


UNITED STATES ATTORNEY
FOR DEPARTMENT OF LABOR
110 W VINE STREET STE 400
LEXINGTON KY 40507-1618

UNITED STATES ATTORNEY
FOR IRS
110 W VINE STREET STE 400
LEXINGTON KY 40507-1618

US DEPARTMENT OF LABOR
MINE SAFETY AND HEALTH ADMINISTRATION
PO BOX 360250M
PITTSBURGH PA 15251


VIRGINIA DRILLING
P.O. BOX 1198
VANSANT, VA 24656-1198

WARREN HALLE
2900 LINDEN LANE
SILVER SPRINGS, MD 20910-1265

WEST RIVER MACHINERY
HC 67 BOX 75
OAKWOOD VA 24631-9613


WEST RIVER MACHINERY
HCC 67, BOX 75
VANSANT, VA 24656

WEST RIVER MACHINERY
STITES & HARBISON, PLLC
250 WEST MAIN STREET, SUITE 2300
LEXINGTON, KY 40507-1758

Jerry Roulett
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, KY 40507-1758


Joe Street
Stites & Harbison, PLLC
250 West Main Street
Suite 2300
Lexington, KY 40507-1758

Paul Stewart Snyder
PO Box 1067
Ashland, KY 41105-1067

Sam Davis
Gess Mattingly & Atchison, P.S.C.
c/o John T. Hamilton
201 West Short Street
Lexington, KY 40507-1269


Tony Gannacone, III
c/o Fowler Measle & Bell PLLC
300 West Vine Street
Suite 600
Lexington, KY 40507-1621

William E. Detherage
c/o James W. Gardner, Esq.
HENRY WATZ GARDNER SELLARS & GARDNER, PL
401 West Main Street, Suite 314
Lexington, KY 40507-1835


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


CONSOL CAPITAL, LLC
23339 MIRABELLA CIRCLE
NORTH BOCA RATON, FL 33433

INTERNAL REVENUE SERVICE
P.O. BOX 21126
PHILADELPHIA, PA 19114


Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).


JOE GARY STREET
ROUTE 2 BOX 647
VANSANT VA 24656

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Commonwealth of Kentucky, Department for N

(u)Kentucky Coal Venture I, LLC

(u)Martin County Coal Corporation


(d)TKT TRUCKING
PO BOX 250
CHESAPEAKE OH 45619-0250

(u)WEST RIVER CONVEYORS & MACHINERY COMPANY

End of Label Matrix
Mailable recipients    76
Bypassed recipients     5
Total                  81