## SETTLEMENT AGREEMENT

1.      This Settlement Agreement ("this Agreement") is entered into this 14th day of December, 2007, between and among the following parties:

Kentucky Coal Venture I LLC ("KCVI"), Kentucky Coal Venture II LLC ("KCVII"), THC Kentucky Coal Venture I LLC ("THC"), West Virginia Coal Venture I LLC ("WVCV"), Warren E. Halle ("WEH"), all Halle-related entities (any entity that WEH has any interest in), KWV Operations LLC ("KWV"), Kenneth Adamson ("Adamson"), collectively referred to herein as "Halle"; and Darrell K. Williams ("DKW"), Nathan J. Williams ("NJW"), collectively referred to herein as "Williams", Alma Energy, LLC ("Alma") and Nathan's Welding, LLC ("Nathan's Welding") (collectively, the "Parties"; individually, a "Party")

2.      This Agreement relates to the following:

a.      *Kentucky Coal Venture I, LLC v. Darrell Williams, et al.*, Case No.: 07 CV 1339 (D. Md.)

b.      *In re Alma Energy, LLC*, Chapter 11, Case No. 07-70370 and Adversary Proceeding Nos. 07-07025 and 07-07032 (Bankr. E.D. Ky); and

c.      The proceeding currently pending in Pike Circuit Court, *THC Kentucky Coal Venture I LLC v. Nathan Williams,* Case No. 07-C1-00910.

d.      And all other matters in any way related to Halle as a Party and Williams, Nathan's Welding, and/or Alma as Party/Parties.

3.       The Parties enter into this Agreement to resolve any and all disputes that have arisen between them and to avoid the burden, expense and uncertainties of litigation. In entering into this Agreement, the Parties do not admit, and specifically deny, that they breached any contract, violated or breached any duty, engaged in any misrepresentation or deception or violated any federal, state, or local law, or any regulations or guidelines promulgated pursuant to law. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by any of the Parties of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, neither this Agreement nor any of its terms, Exhibits or related judicial orders or findings shall be offered or received as evidence or otherwise in any action or proceeding to establish any liability, admission, fact or thing on the part of or against any Party to this Agreement.

4.      Halle is relieved of any and all obligations, if any ever existed, to provide any monetary or other investment capital to KCVI and/or Alma. Alma hereby acknowledges that Halle is neither its partner, joint venturer or fiduciary.

5.      Alma shall be fully responsible for any and all past, present, or future costs of its operations and shall not look to Halle for payment of any money and/or consideration of any kind.

1



6.      Any claims against Alma whether past. present, or future shall be the sole responsibility of Alma.

7.      This Agreement is a Mutual Release of all claims and causes of action by. between. and among the following: Williams; Alma:  Nathan's Welding:  WEH:  KCVI: THC: KCVII; WVCV: KWV: Adamson; and all other entities controlled by. owned in part by or associated with Halle.   The claims mutually released include any and all claims (including, but not limited to any claims, defenses or assertions of rescission, voidness, voidability. illegality, offset or the like), demands, actions. causes of action, rights. offsets. restitution, damages, lawsuits, liens, costs, losses, expenses or liabilities of any kind whatsoever, for any relief or remedy whatsoever. including monetary. injunctive or declaratory relief, or for reimbursement of attorneys' fees. costs or expenses, whether known or unknown, alleged or not alleged in any of the four (4) lawsuits (the "Actions") and/or Alma's Chapter 11 case. Case No. 07-70370 (the "Chapter 11 Case") referenced above in paragraph 2. suspected or unsuspected. contingent or vested, which any Party to this Agreement has had, now has, or may have in the future against any other Party which arose out of the events, acts. or omissions that were alleged or that could have been alleged in the Actions.  The within Mutual Release shall be effective immediately upon entry of an Order by United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court") approving this Agreement.  The within Mutual Release shall not be applicable to any claim or cause of action related to breaches of this Agreement after the Bankruptcy Court enters an Order Approving the same.

8.      All claims against Billy Shelton and James P. Pruitt, Jr. by any Party are hereby released by the Parties.

9.      The within mutual releases apply to all owners, agents. officers. directors. attorneys, employees and members of any released or releasing party.

10.     Nothing in this Agreement shall be construed to release or be intended to be a release of any claims or causes of action that any Party to this Agreement may have against any of the following: Joe Street ("Street"), J.B. Roulett ("Roulett"), West River Conveyors and Machinery Company, any entity owned or controlled by Street and/or Roulette, or the Grundy National Bank.

11.     Alma, the Williams. and Nathan's Welding hereby release all claims and causes of action that they may have relating to the Glen Alum property. the Logan property. or any other properties in which  Halle has an ownership interest; provided. however. that this release shall have no effect on any claims which such releasing parties may obtain or acquire as to or against such properties after the date hereof.

12.     Alma is solely responsible for resolving. paying and/or discharging all claims of the creditors in the Chapter 11 Case.

13.   KCVI will withdraw the Proof of Claims (Claim No. 1-1, as amended by Claim No. 1-2) that it filed in the Chapter 11 Case, except that THC or its designee is hereby given title (free and clear of all liens, claims and encumbrances) to the batteries: one D-9 dozer; one DB 25 and one DB 30 rock truck. and one scoop. all of which personal property is currently located at Glen Alum. Alma shall take

2

all reasonable steps to transfer legal title to said items to THC or its designee. Promptly after this Agreement is executed by all Parties, Alma shall file a motion in the Chapter 11 Case to sell, convey and transfer (on the date of approval of this Agreement by the Bankruptcy Court) the items referred to in the first sentence of this paragraph free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. 363(f).

14.    Alma shall take all reasonable steps to determine the allowability and validity of all claims filed in the Chapter 11 Case.

15.    KCVI shall assign to THC all right, title and interest in and to all claims and/or payments relating to the matters discussed herein and KCVI shall have no further interest in and to any claims, benefits or rights relating to any agreements previously entered into with Alma or its affiliates.

16.    THC or its designee will also be given title to one 980-B loader and one 988-A loader currently located at Netley Mines free and clear of all liens, claims and encumbrances. Promptly after this Agreement is executed by all Parties, Alma shall file a motion in the Chapter 11 Case to sell, convey and transfer (on the date of approval of this Agreement by the Bankruptcy Court) the two (2) loaders referred to in the preceding sentence of this paragraph free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. 363(f).

17.    NJW or his designee shall be provided title to the following equipment from THC or its designee: one of the DB rock trucks (at THC's choice), one scoop, the 980-B loader, the 988-A loader. THC or its designee will retain all other equipment in which KCVI has an interest.

18.    THC or its designee will be paid a royalty of seven percent (7.0%) of the gross sales price per ton of coal up to a price of $65.00 per ton (which price shall be the price actually paid by the purchaser of the coal and shall not be reduced by any additional costs or fees including, without limitation, trucking and all other costs of Alma or any operator or one of its contractors engaged by Alma to perform mining services at the Kentucky mines ("Alma's Operator"), including, but not limited to, William Detherage and BSD1, LLC); provided, however that in no event shall the minimum royalty paid to THC or its designee be less than $4.20 per ton.

19.    THC or its designee will receive the royalty payment referred to in paragraph 18 above before all other obligations and debts of Alma are paid or satisfied. If the gross sales price of coal exceeds $65.00 per ton, THC or its designee will receive $4.55 plus an additional $0.50 for every additional $1.00 increase in sales price in excess of $65.00 per ton, mined from the existing Kentucky properties as illustrated on the following schedule:

| PRICE | 7% | % | ESCALATOR | PAYMENT |
|-------|------|---|-----------|---------|
| $65 | $4.55 | 7 | | $4.55 |
| $70 | $4.55 | | $2.50 | $7.05 |
| $75 | $4.55 | | $5.00 | $9.55 |
| $80 | $4.55 | | $7.50 | $12.05 |
| $85 | $4.55 | | $10.00 | $14.55 |
| $90 | $4.55 | | $12.50 | $17.05 |

| $95 | $4.55 | | $15.00 | $19.55 |
| $100 | $4.55 | | $17.50 | $22.05 |
| $105 | $4.55 | | $20.00 | $24.55 |
| $110 | $4.55 | | $22.50 | $27.05 |
| $115 | $4.55 | | $25.00 | $29.55 |
| $120 | $4.55 | | $27.50 | $32.05 |
| $125 | $4.55 | | $30.00 | $34.55 |

20.    If Alma washes its coal at Glen Alum, however, for the purpose of determining the royalty payment, the price charged to wash the coal will be subtracted from the ultimate gross sales price and the royalty will be calculated on the difference only. By way of illustration, if Alma is charged $6.00 per clean ton to wash its coal at Glen Alum, and then sells the washed coal for $81.00, the gross sales price will be deemed to be $75.00 for the purpose of calculating the royalty and the royalty will be $9.55 per ton. The actual cost of washing the coal will be agreed upon by Alma and Glen Alum prior to the coal being washed. In addition, it is understood that this arrangement is neither binding upon Alma to ship its coal to Glen Alum nor binding upon Glen Alum to accept and wash Alma's coal. No claim or cause of action will accrue in favor of Alma if Glen Alum declines to wash any of Alma's coal for any reason whatsoever. Alma will be responsible for arranging any factoring of its coal. Neither Halle nor Glen Alum will factor Alma's coal.

21.    All coal sales proceeds will be deposited with a mutually agreed upon escrow agent who will be responsible for the payments set forth herein.

22.    Alma and/or Alma's Operator or one of its contractors shall provide to THC or its designee basic documentation confirming coal production and coal sales on the next business day, and payment of all government mandated charges, all taxes and all royalties within ten (10) calendar days of payment.

23.    Insurance will be provided and maintained by Alma or Alma's Operator or one of its contractors in the amount of $1,000,000 per incident/$2,000,000.00 per occurrence primary Commercial General Liability coverage and $10,000,000.00 in excess umbrella liability coverage. THC or its designee will be named as an additional insured. Said insurance shall be in force at the time this Agreement is approved by an Order of the Bankruptcy Court.

24.    Alma's failure to provide required production reports by the next business day will result in a payment due to THC or its designee in an amount equal to an additional 10% of the gross sales price for each business day of delay in providing said reports applied to the gross sales price payable to THC or its designee as described in paragraph nineteen (19) above. This extra percentage will be applied only on the coal sale for which the paperwork has not been provided.

25.    All liens of record presently held by KCVI or any Halle-related entity on any assets of Alma shall be discharged and released.

26.    The note secured by the mortgage on NJW's house held by THC will be deemed to have been paid in full and the mortgage held by THC will be discharged and released.

27.    Alma agrees that the Proof of Claim (Claim Number 11) filed by WEH in the Chapter 11 Case with respect to an Installment Promissory Note dated December 15, 2006 in the original principal amount of $125,000.00 and the Proof of Claim (Claim No. 10) filed by THC in the Chapter 11 Case with respect to an Installment Promissory Note dated February 16, 2007 in the original principal amount of $160,000 are valid and allowed in full. The Mutual Release set forth herein shall have no force or effect on the Proofs of Claims referred to in this paragraph of this Agreement.

28.    No party to this Agreement shall file an objection to Claims Nos. 10 and 11 (the "Proofs of Claims"). The Bankruptcy Court may adjudicate any objection to the Proofs of Claims filed by persons other than Alma, Williams or Nathan's Welding, which persons shall not encourage or solicit any other creditor of Alma or party in interest to file any such objection.

29.    NJW will also be allowed to pursue his claim for $500,000.00 (Claim No. 18) filed in the Chapter 11 Case without objection by Alma, Halle or any Halle-related entity. All other claims of Nathan's Welding and Williams shall be withdrawn from the Chapter 11 Case with prejudice.

30.    The lawsuit currently pending in the Pike County Court, Case No. 07-CI-00910 (the "Pike Action"), will be settled and dismissed with prejudice within thirty (30) days of the entry by the Bankruptcy Court of an Order approving this Agreement and without costs on a confidential basis.

31.    Alma has the right to inform the Bankruptcy Court of the agreement of the Parties to dismiss the Pike Action, but shall refrain from disclosing the consideration paid unless the Bankruptcy Court requires such disclosure in connection with the motion to approve this Agreement.

32.    The material terms of this Agreement shall be submitted to the Bankruptcy Court for approval. In the event that the Bankruptcy Court does not approve such agreement, or this Agreement is objected to by creditors, the Parties reserve the right to modify the same in a manner reasonably acceptable to each Party.

33.    Promptly after all Parties execute and deliver this Agreement, Alma shall file in the Chapter 11 Case a motion to approve such agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and take all steps reasonably necessary to obtain entry of a final Order by the Bankruptcy Court approving such agreement. Upon entry of an Order by the Bankruptcy Court approving this Agreement, legal counsel for Halle shall file the dismissal stipulations with respect to Adv. Proc. Nos. 07-7025 and 07-7032 included in Exhibit 1 hereto, and counsel for the Parties to the Pike Action shall execute and file a stipulation of dismissal with prejudice and without costs in such action.

34.    Alma, Nathan's Welding and the Williams agree to indemnify and hold Halle harmless from any claims and causes of action released by this Agreement.

35.    Upon completion of securing of the funds necessary for bonding, which shall occur no later than sixty (60) days from the date of this Agreement, Alma shall, subject to the requirements of the Commonwealth of Kentucky regarding the proper party to hold the Permits (as defined in this

5

paragraph). take all steps necessary to have Permit Nos. 898-4283 and 898-4314 (the "Permits") currently issued to Nathan's Welding reissued to Alma and held and maintained in good standing by Alma.

36.    In the event of an Alma Default (as defined herein) that is not cured. pursuant to the cure period provided in the default provisions, by Alma. Alma's Operator or any of its contractors. the Permits shall be immediately transferred to a party designated by THC.  An Assignment of Permits ("Permit Assignment") shall be entered into at the time this Agreement is entered into. which Permit Assignment shall be held in escrow by an escrow agent reasonably acceptable to Alma and THC, and which Permit Assignment shall be immediately released upon the occurrence of an Alma Default that is not cured within the cure period provided in the default provision. Alma's attorney shall prepare said Permit Assignment for the approval of Halle and once approved by Halle. Alma's attorney shall attach said Permit Assignment to this Agreement as Exhibit 2.  To the extent the Permit Assignment is not accepted by the Commonwealth of Kentucky. the parties will promptly prepare all necessary documentation to effect the transfer.

37.    This Agreement terminates and replaces all previous oral and/or written agreements between the Parties.

38.    An Alma Default shall be defined as the failure of Alma. Alma's Operator or any of its contractors. to:

(a) make or arrange for all payments required by leases, licenses, permits. contracts and other agreements related to this Agreement:

(b) pay all taxes, assessments and like charges except taxes determined or measured by a Alma's sales revenue or net income and taxes, provided. that Alma shall have the right to contest (in the courts or otherwise) the validity or amount of any taxes. assessments or charges if Alma deems them to be unlawful. unjust, unequal or excessive. or to undertake such other steps or proceedings as Alma may deem reasonably necessary to secure a cancellation, reduction, readjustment or equalization thereof. but in no event shall Alma permit or allow title to the assets to be lost as the result of the nonpayment of any taxes. assessments or like charges:

(c) apply for all necessary permits. licenses or approvals;

(d) comply with all applicable laws. ensure that its operations are conducted in compliance with all applicable laws and ensure that all of its agents, employees, subcontractors and other parties engaged in connection with the performance of the operations comply with all applicable laws:

(e) notify promptly THC or its designee of any allegations of violations of any laws or regulations governing the operation of Alma's business.  In the event of any such violation or the failure to timely cure or resolve such violations on behalf of both Parties through performance. payment of fines and penalties or both and the cost thereof shall be borne entirely by Alma:

(f) prepare and file all reports or notices required for or as a result of operations:

(g) prosecute and defend. all litigation or administrative proceedings arising out of operations.  THC or

its designee shall have the right to participate, at its own expense, in such litigation or administrative proceedings. THC or its designee shall approve in advance and in writing any settlement of any such litigation or proceedings:

(h) provide insurance listed in paragraph twenty-three (23) of this Agreement and written evidence of insurance at the request of THC or its designee. Alma shall have ten (10) business days from the date of any lapse in coverage to perform all steps necessary to reinstate or obtain coverage from another carrier subject to the carrier's normal approval process:

(i) perform or cause to be performed all assessment and other work, and pay all governmental fees required by law in order to maintain the unpatented mining claims, mill sites and tunnel sites operated pursuant to this Agreement;

(j) to timely record with the appropriate State or County and file with the appropriate United States Agency any required affidavits, notices of intent to hold and other documents in proper form attesting to the payment of governmental fees, the performance of assessment work or intent to hold the claims and sites, in each case in sufficient detail to reflect compliance with the requirements applicable to each claim and site;

(k) to continue operations and keep equipment in good working order: provided that the failure to continue operating for less than forty-five (45) days which is caused by any breakdown of equipment shall not be deemed a default:

(l) keep and maintain and provide to THC or its designee basic documentation confirming coal production and coal sales and payment of government mandated charges, and all taxes royalties: or

(m) provide THC or its designee with access to, and the right to inspect and, at its cost and expense, copy all maps, drill logs and other drilling data, core, pulps, reports, surveys, assays, analyses, production reports, operations, technical, accounting and financial records, and other business information, to the extent preserved or kept by Alma or Alma's Operator or one of its contractors.

39.     Alma shall be provided a cure period of ten (10) business days commencing after written notice of default except for subsection (h) and (k) for which no additional cure period shall be provided. A cure that is provided for under a confirmed plan of reorganization in the Chapter 11 Case shall be deemed timely.

40.     Halle hereby acknowledges and agrees that Alma will be the Operator with overall management responsibility for Operations and operational control over the Mining and sale of Products related to the Right Fork I; Right Fork II (also known as Little Ty); and Netley Properties.

41.     The Operator has the authority and power to perform any activity necessary, appropriate, or incidental to the Mining and sale of Products.

42.     Alma hereby agrees to serve as the Operator until it resigns or withdraws, is removed as an Operator following an Alma Default as defined herein, or until the Product is exhausted or not economical to extract for a period in excess of 12 months .

43.     In the event that Alma utilizes contractors or agents to perform any services to be performed by Alma. Alma shall be solely liable to said contractors and agents and Halle and its

affiliates shall have no liability or obligation relating thereto. Alma shall release, indemnify and hold harmless Halle and any Halle-related entity and its affiliates against any and all liability, obligations and claims by Alma. Alma's Operator and all contractors and agents of Alma.

44.     If the market price for coal goes below $60 per ton, the mines may close and go idle until the market price of coal increases to above $60 per ton. The time of closure shall start when coal stops being produced. The time period that the mines are idle shall not exceed twelve (12) consecutive months. Prior to shutting down any mine, Alma and/or Alma's Operator or any of its contractors shall give THC or its designee the option to buy the coal for $60 per ton with THC picking up the difference in the cost of trucking that Alma would pay to Hampden Coal. If THC decides to exercise the option, the mines will continue to operate. This option shall be at the sole and absolute discretion of THC or its designee.

45.     Alma agrees that in the event it commences a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its assets and liabilities under any bankruptcy, insolvency or other similar law, or seeking the appointment of a trustee, receiver, liquidator, custodian, an assignee for the benefit of creditors, or other similar official for it or any of its property, regardless of whether such case or proceeding is commenced after the Chapter 11 Case (07-70370) is dismissed or closed or Alma emerges from such case as a reorganized debtor, such action shall be commenced only in a bankruptcy or state court of competent jurisdiction in the Commonwealth of Virginia. In the event that any party seeks liquidation, reorganization or other relief under any bankruptcy, insolvency or other similar law, or seeks or has sought against Alma, the appointment of a trustee, receiver, an assignee for the benefit of creditors, liquidator, custodian or other similar official of it or any of its property, Alma shall file pleadings and otherwise use its best efforts to have such involuntary case or proceeding dismissed or transferred to a bankruptcy or state court in the Commonwealth of Virginia which may lawfully assert jurisdiction over such case or proceeding and shall not resist the efforts of Halle and its affiliates to have an involuntary proceeding or case dismissed or, if applicable, a voluntary case transferred to a bankruptcy or state court in the Commonwealth of Virginia which may lawfully assert jurisdiction over such case or proceeding. The terms of this Agreement will be incorporated by reference in any plan proposed by the Alma in the Chapter 11 Case.

46.     If a dispute under this Agreement has not been resolved by negotiation between the Parties within ten (10) days after delivery of a written notice of demand for negotiation, the Parties shall endeavor to settle the dispute by mediation under the CPR Mediation Procedure then currently in effect. Unless otherwise agreed, the Parties will select a mediator from the CPR Panels of Distinguished Neutrals, and if such mediator is not available at the time a mediation is requested, such other mediator as is mutually acceptable to all Parties, to resolve their disputes for a period of thirty (30) days. In the event that at the end of said thirty (30) day period, the dispute is not resolved, an action may only be filed by any of the Parties in a court of competent jurisdiction in the State of Maryland.

47.     This Agreement may be executed in multiple counterparts, each one of which shall be deemed an original, but all of which shall be considered together as one and the same instrument. Further, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart. Execution by a Party of a signature page hereto shall constitute due

8

execution and shall create a valid, binding obligation of the Party so signing. It shall not be necessary or required that the signatures of all Parties appear on a single signature page hereto.

48.    A facsimile or imaged signature on this Agreement shall be deemed to be an original signature for all purposes. In the event that a suit or a proceeding is brought to enforce the terms of this Agreement or any document executed in connection herewith, the plaintiff or movant shall not be required to produce or introduce into evidence a copy of this Agreement bearing original inked signatures of the Parties. A facsimile or imaged signature on this Agreement shall suffice in any legal proceeding or action to enforce the terms hereof.

49.    The failure of a Party to insist upon strict performance of any provision of this Agreement or to exercise any right, power, or remedy upon a breach hereof shall not constitute a waiver of any provision of this Agreement or limit such Party's right thereafter to enforce any provision or exercise any right.

50.    No modification of this Agreement shall be valid unless made in writing and duly executed by all Parties.

51.    This Agreement contains the entire understanding of the Parties and supersedes all prior written and oral agreements and understandings between the Parties. This Agreement shall be binding upon and inure to the benefit of the respective successors and permitted assigns of the Parties unless otherwise provided herein.

52.    All notices hereunder shall be in writing and shall be served on:

The Halle Companies
Attn: Stephen N. Fleischman, Vice President
2900 Linden Lane
Suite 300
Silver Spring, MD 20910

Alma Energy. LLC
59 Davis Branch
Stone. KY 41657

James P. Pruitt. Esquire
P.O. Box 339
Pikeville. KY 41502

Paul Stewart Snyder, Esquire
PO Box 1067
Ashland, KY 41105

Roger C. Simmons, Esquire
630-B West Patrick Street
P. O. Box 430
Frederick. MD 21705

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

Warren E. Halle

_____

Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC


_____

Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC


_____

Darrell K. Williams


_____

Nathan J. Williams


_____

Nathan's Welding, LLC


_____

Alma Energy, LLC
By:  Steven Singleton, President


_____

Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC


_____

E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC


_____

Kenneth Adamson

12/17/07  MON 11:48 FAX 301 698 0392     GORDON & SIMMONS                    ☐002

Case 07-70370-jl   Doc 202-1   Filed 01/31/08   Entered 01/31/08 19:14:45   Desc
Continuation of Main Document Exhibit A - Settlement Agreement with Attachments   Page 11 of 22

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:


Warren E. Halle


Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC


Darrell K. Williams


Nathan L. Williams


Nathan's Welding, LLC


Alma Energy, LLC
By   Steven Singleton, President


Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC


E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan L. Williams and Nathan's Welding, LLC


Kenneth Adamson

Dec 16 07 11:07p       almaenergy              1-304-574-6002          p.1

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren F. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren F. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By: Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren E. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By:  Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

Michael J. Gartland, Esquire
Wise DelCotto PLLC
200 North Upper Street
Lexington, KY 40507

Read and agreed to:

_____
Warren E. Halle

_____
Stephen N. Fleischman, Vice President
On behalf of Kentucky Coal Venture I LLC, Kentucky Coal Venture II LLC, THC Kentucky Coal
Venture I LLC, West Virginia Coal Venture I LLC, and KWV Operations LLC

_____
Roger C. Simmons, Esquire
Counsel for Warren E. Halle, Kenneth Adamson, Kentucky Coal Venture I LLC, Kentucky Coal
Venture II LLC, THC Kentucky Coal Venture I LLC, West Virginia Coal Venture I LLC and KWV
Operations LLC

_____
Darrell K. Williams

_____
Nathan J. Williams

_____
Nathan's Welding, LLC

_____
Alma Energy, LLC
By:  Steven Singleton, President

_____
Paul Stewart Snyder, Esquire
Bankruptcy Counsel for Alma Energy, LLC

_____
E. David Hoskins, Esquire
Counsel for Darrell K. Williams, Nathan J. Williams and Nathan's Welding, LLC

_____
Kenneth Adamson

10

## Exhibit 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

                                               CASE NO. 07-70370

ALMA ENERGY, LLC                           CHAPTER 11

         DEBTOR

_____

ALMA ENERGY. LLC                        PLAINTIFF

v.                                              ADV. PROC. NO. 07-07025

KENTUCKY COAL VENTURE I, LLC,       DEFENDANTS
*et al.*

---

### STIPULATION OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS PURSUANT TO RULE 41(a)(1)(ii) OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. made applicable to this Adversary Proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure, Plaintiff Alma Energy, LLC ("Plaintiff") and Defendants Kentucky Coal Venture I, LLC, Kentucky Coal Venture II. LLC, THC Kentucky Coal Venture I. LLC, West Virginia Coal Venture I. LLC, KWV Operations, LLC, Warren E. Halle, Ken Adamson and Tony Gannacone III ("Defendants"), by their respective undersigned counsel, hereby stipulate and agree that this Adversary Proceeding is dismissed with prejudice and without costs as against Defendants Kentucky Coal Venture I, LLC, Kentucky Coal Venture II, LLC, THC Kentucky Coal Venture I. LLC, West Virginia Coal Venture I, LLC, KWV Operations. LLC, Warren E. Halle and Ken Adamson.  This Adversary Proceeding is not dismissed as to Defendant Tony Gannacone, III.



Plaintiff and Defendants waive all rights of appeal with respect to the entry of this dismissal

stipulation.

/s/ Paul Stewart Snyder, Esq.
P.O. Box 1067
Ashland, KY  41105
Telephone: (606) 325-5555
E-mail:    ps@ws5.com
COUNSEL FOR PLAINTIFF
ALMA ENERGY, LLC


WISE DELCOTTO PLLC


/s/ Michael J. Gartland, Esq.
200 North Upper Street
Lexington, KY  40507
Telephone: (859) 231-5800
Facsimile:  (859) 281-1179
E-mail:     mgartland@wisedel.com

-and-

/s/ Roger C. Simmons, Esq.
*Admitted pro hac vice*
Gordon & Simmons, LLC
603-B West Patrick Street
Frederick, MD  21701
Telephone: (301) 662-9122
Facsimile:  (301) 698-0392
E-mail:     rsimmons@gordonsimmons.com
COUNSEL FOR DEFENDANTS
KENTUCKY COAL VENTURE I, LLC
KENTUCKY COAL VENTURE II, LLC
THC KENTUCKY COAL VENTURE I, LLC
WEST VIRGINIA COAL VENTURE I, LLC
KWV OPERATIONS, LLC
WARREN E. HALLE
and KEN ADAMSON

2



/s/ Ellen Arvin Kennedy, Esq.
Fowler, Measle & Bell PLLC
300 W. Vine Street. Suite 600
Lexington, KY  40507-1660
Telephone: (859) 252-6700
Facsimile:  (859) 255-3735
E-mail:      eakennedy@fowlerlaw.com
COUNSEL FOR DEFENDANT
TONY GANNACONE. III

Z:\Clients\Kentucky Coal Venture\Pleadings AP 07-7025\Stipulation of Dismissal.doc



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

IN RE:

ALMA ENERGY, LLC

      DEBTOR

CASE NO. 07-70370
CHAPTER 11

---

ALMA ENERGY, LLC

v.

KENTUCKY COAL VENTURE I, LLC,
*et al.*

PLAINTIFF

ADV. PROC. NO. 07-07032

DEFENDANTS

---

## STIPULATION OF DISMISSAL WITH PREJUDICE AND WITHOUT COSTS PURSUANT TO RULE 41(a)(1)(ii) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7041 of the Federal Rules of Bankruptcy Procedure, Plaintiff Alma Energy, LLC ("Plaintiff") and Defendants Kentucky Coal Venture I, LLC and Warren E. Halle ("Defendants"), by their respective undersigned counsel, hereby stipulate and agree that this Adversary Proceeding is dismissed with prejudice and without costs. Plaintiff and Defendants waive all rights of appeal with respect to the entry of this dismissal stipulation.

/s/ Paul Stewart Snyder, Esq.
P.O. Box 1067
Ashland, KY 41105
Telephone: (606) 325-5555
E-mail:     ps@ws5.com
COUNSEL FOR PLAINTIFF
ALMA ENERGY, LLC

WISE DELCOTTO PLLC


/s/ Michael J. Gartland, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
E-mail:    mgartland@wisedel.com

-and-

/s/ Roger C. Simmons, Esq.
*Admitted pro hac vice*
Gordon & Simmons, LLC
603-B West Patrick Street
Frederick, MD 21701
Telephone: (301) 662-9122
Facsimile: (301) 698-0392
E-mail:    rsimmons@gordonsimmons.com
COUNSEL FOR DEFENDANTS
KENTUCKY COAL VENTURE I, LLC
KENTUCKY COAL VENTURE II, LLC
THC KENTUCKY COAL VENTURE I, LLC
WEST VIRGINIA COAL VENTURE I, LLC
KWV OPERATIONS, LLC
WARREN E. HALLE
and KEN ADAMSON


Z:\Clients\Kentucky Coal Venture\Pleadings AP 07-7032\Stipulation of Dismissal.doc

2



## Exhibit 2

**Permit Assignment**

To be provided per paragraph 36 of this Agreement.

Respectfully Submitted,

/s/ Paul Stewart Snyder
COUNSEL FOR THE DEBTOR
Paul Stewart Snyder, Atty.
1544 Winchester Ave Ste 820
PO Box 1067
Ashland, Ky 41105-1067
ps@ws5.com
off 606 325-5555
fax 606 324-1665
cell 606 324-2866

The foregoing has been served
by ecf noticing on all parties
who receive such notice and on
all other parties by mail this the
20th day of December, 2007,
parties receiving notice include:

**James W. Gardner**
401 W Main St #314 Victorian Square
Lexington, KY 40507-1646
JWG@HWGSG.com

**J Alec Mackenzie**
Office of Legal Services
#2 Hudson Hollow Road
Frankfort, KY 40601
Alec.Mackenzie@ky.gov

**Ellen Arvin Kennedy**
300 W Vine St #600
Lexington, KY 40507
bankruptcy@fmblaw.com

**John Thomas Hamilton**
201 W Short St
Lexington, KY 40507-1231
jhamilton@gmalaw.com

**Michael J. Gartland**
200 N. Upper St.
Lexington, KY 40507
(859) 231-5800
gartlandbk@wisedel.com

19

**Mary Elisabeth Naumann**
PO Box 2150
Lexington, KY 40588-9945
kybankruptcy@jacksonkelly.com

**Sarah C. McCarty**
707 Virginia Street E., 8th Flr
Charleston, WV 25301

**Arthur M Standish**
PO Box 1588
Charleston, WV 25326-1588
standiam@steptoe-johnson.com

**Erica N. Galyon**
250 W. Main ST.
2300 Lexington Financial Center
Lexington, KY 40507
egalyon@stites.com

**Philip Hanrahan**
100 E. Vine St. #500
Lexington, KY 40507
philip.l.hanrahan@usdoj.gov

**Rachelle C. Williams**
100 E. Vine St. #500
Lexington, KY 40507
rachelle.c.williams@usdoj.gov