ELECTRONIC CITATION: 2010 FED App. 0008P (6th Cir.)
File Name: 10b0008p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re: ALMA ENERGY, INC., <br><br> Debtor. <br><br>———————————————— <br><br> PIKEVILLE ENERGY GROUP, LLC, <br><br> Appellant, <br><br> v. <br><br> PHAEDRA SPRADLIN, CHAPTER 7 TRUSTEE, <br><br> Appellee. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 09-8074 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky.
Case No. 07-70370.

Argued: August 11, 2010

Decided and Filed: September 7, 2010

Before: BOSWELL, FULTON, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:** Charles J. Lisle, CHARLES J. LISLE PSC, Lexington, Kentucky, for Appellant. Gregory R. Schaaf, GREENEBAUM DOLL & McDONALD PLLC, Lexington, Kentucky, for Appellee. **ON BRIEF:** Charles J. Lisle, CHARLES J. LISLE PSC, Lexington, Kentucky, for Appellant. Gregory R. Schaaf, GREENEBAUM DOLL & McDONALD PLLC, Lexington, Kentucky, for Appellee.

## OPINION

THOMAS H. FULTON, Chief Bankruptcy Appellate Panel Judge. Pikeville Energy Group, LLC ("Appellant") appeals an order of the bankruptcy court denying its application for allowance of administrative expense claim on grounds that Appellant was judicially estopped from asserting that claim.

For the reasons stated below, the Panel affirms the bankruptcy court's judgment in favor of the Appellee.

### I.   ISSUE ON APPEAL

Did the bankruptcy court err in finding that Appellant was judicially estopped from asserting an administrative claim against the bankruptcy estate of the Debtor?

### II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1484, 1497 (1989) (citations omitted). The bankruptcy court's order denying the application for administrative expense claim is a final order. *United Mine Workers of Am. v. Lexington Coal Co., LLC (In re HNRC Dissolution Co.),* 396 B.R. 461, 465 (B.A.P. 6th Cir. 2007).

The court's findings of fact are reviewed under the clearly erroneous standard. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.),* 486 F.3d 940, 944 (6th Cir. 2007). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

The bankruptcy court's conclusions of law and its application of judicial estoppel are reviewed de novo. *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008).[1] "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

### III. FACTS

Alma Energy, LLC (the "Debtor") acquired rights in 2005 and 2006 to mine coal on two tracts of land in Pike County, Kentucky, known as the "Pocahontas Leases." On July 27, 2006, the Debtor and THC Kentucky Coal Venture I, LLC ("THC") organized a joint venture known as "KCV I" for the purpose of mining and selling coal from the Pocahontas Leases. Eventually, disputes regarding operations, funding, and payments arose between the members of the joint venture leading to cessation of the mining operations.

On August 13, 2007, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Following the filing of the Debtor's chapter 11 petition, the Debtor, THC, and KCV I entered into a settlement agreement for the purpose, at least in part, of allowing the Debtor to resume the mining operations. The bankruptcy court approved the settlement agreement on February 8, 2008.

On March 17, 2008, the Debtor and Appellant met to explore the possibility of Appellant funding the Debtor's resumption of mining operations. Following review of the settlement agreement entered into by the Debtor, THC, and KCV I, and the bankruptcy court's approval of

---

[1] In *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808 (2001), the Supreme Court described judicial estoppel as "an equitable doctrine invoked by the court at its discretion." (citation omitted). A majority of federal courts have applied the abuse of discretion standard to a court's application of judicial estoppel. *See, e.g., Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999); *but see United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999) (applying de novo standard of review). While the Sixth Circuit Court of Appeals has on occasion questioned the continued use of the de novo standard in reviewing the application of judicial estoppel, *see Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (unpub. table decision), "[w]ithout a more definitive statement from the Supreme Court [the Sixth Circuit has determined it] is bound by its own precedent and will therefore apply the *de novo* standard to the [application of judicial estoppel.]" *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008).

same, Appellant agreed to finance the restoration of the Debtor's mining activities and to provide management and marketing services once the Debtor resumed activity.

The Debtor did not seek bankruptcy court approval for post-petition financing by Appellant. Nevertheless, over a three-month period Appellant expended nearly $2,000,000 in connection with the Debtor's project. Appellant claims that over $867,000 of that expenditure directly benefitted the Debtor's estate. Appellant also undertook to find buyers for the Debtor's coal, and to pay the Debtor $64 per merchantable ton of coal produced. Appellant did not require that its expenditures be repaid from the Debtor's revenues on any particular schedule. Appellant apparently understood that the Debtor's commitments to pre-petition creditors, governmental agencies and royalty recipients under its proposed reorganization plan would for several years consume nearly all of the $64 per ton that the Debtor projected receiving for its coal. Appellant was willing to defer its compensation so that the Debtor could successfully reorganize.

On June 20, 2008, the Debtor resumed mining operations. Over a five month period, 100,000 tons of coal were extracted, the sale of which generated over $1.6 million. Approximately $72,000 was paid to Appellant for the leasing of certain equipment. At the end of 2008, due to market conditions, the Debtor once again ceased mining operations.

On April 17, 2009, the United States Trustee moved to dismiss the case or convert it to one under chapter 7. On May 20, 2009, the bankruptcy court entered an order converting the Debtor's case to one under chapter 7. Also on that date, the United States Trustee appointed Phaedra Spradlin as chapter 7 trustee ("Trustee") of the Debtor and its bankruptcy estate.

On May 19, 2009, Appellant filed an application for allowance of administrative expense claim seeking allowance for an administrative claim in the amount of $867,276.72. Objections to Appellant's application were filed by THC, the United States Trustee, and the newly appointed chapter 7 Trustee. A hearing was held on November 12, 2009, at which the bankruptcy court concluded:

> [I]t's clear to the Court and as virtually all have admitted that - - that Pikeville's expenditure of sums did, in fact, benefit the estate by security, by retrofitting the mine, by producing coal, which produced money for the estate, and to the extent that benefit to the estate is a part of the administrative expense test. Certainly, I think Pikeville

> qualifies in that regard. The problem, it seems to the Court, is the - - the estoppel problem. Multiple times representatives of Pikeville stated to the Court in the hearing of other parties and creditors that they did not intend to be paid back sums they expended as administrative expenses. They also -- they and their representatives were present when other parties made representations to the Court, such as planned reorganization or a disclosure statement that Pikeville did not - - did not expect to be - - to make a claim for administrative expenses. I believe that constitutes a - - waiver of any claim and that they are estopped from making such a claim. I think the US Trustee's analysis is correct, that they chose - - they made a business deal and if that business deal went, they - - they, in all likelihood, would have profited and that reimbursement, as an administrative expense, was not part of the deal that they made or the deal that they represented to the Court. So, that application is overruled.

(J.A. at Docket No. 911-1, pp. 43-44.) On November 16, 2009, the bankruptcy court entered a written order denying the application, and Appellant timely appealed.

The facts at issue here are statements and representations made by the parties regarding Appellant's expectation, or lack thereof, of being reimbursed for its expenses in the form of an administrative expense claim. Those statements, and omissions, are as follows.

On May 8, 2008, the Debtor filed a Disclosure Statement, which read in pertinent part:

> Pikeville [] has provided funds to Blackberry Energy LLC[2] that have allowed it to secure for [the Debtor] all insurance required under the Settlement Agreement, to post the necessary bonds for [the Debtor], and to pay sums to the Commonwealth of Kentucky necessary to transfer mining permits from Nathan's Welding LLC to [the Debtor]. Pikeville [] has pledged to provide all funds necessary or convenient to the continued operations of Blackberry Energy LLC and [the Debtor]. Both Pikeville [] and Blackberry Energy LLC have provided and will provide funds and services in return for payment for future services rendered to [the Debtor] by Blackberry Energy LLC and for the availability of coal necessary to fulfill contractual obligations. **[The Debtor] is under no obligation to repay Pikeville [] or Blackberry Energy LLC any of the funds expended by either entity for the benefit of [the Debtor].**

---

[2] Blackberry Energy LLC was retained as the contract miner for the Debtor.

(J.A. at Docket No. 331, p. 69.) (emphasis in original).

On May 10, 2008, the Debtor filed an Emergency Motion to Approve Mining Agreement in which it represented that Appellant had "agreed to provide all funds necessary to restart production, with no obligation of the Debtor regarding such funds." (J.A. at Docket No. 335, p. 2.) In that motion, the Debtor further represented that "Pikeville Energy assumed the risk that a successful reorganization plan would be possible and agreed to pay all costs and expenses of [the Debtor] in return for the right to purchase coal mined at the [the Debtor's] mine sites." (J.A. at Docket No. 335, pp. 3-4.)

On June 4, 2008, the Debtor filed a Motion to Approve Interim Contract Mining Agreement and to Shorten Notice, which stated in pertinent part:

> 11. Pikeville Energy is willing to provide the funds necessary to restart production based on security interests it has retained in equipment to be used by Blackberry Energy LLC as contract miner for [the Debtor]; interests in a security position it has been granted in mineral interests owned by Nathan Williams that are not related to [the Debtor], namely a property known as Money Branch; assignment of a portion of the allowed unsecured claim of Nathan Williams; and a future equity position in [the Debtor].
>
> 12. The fact that [the Debtor] is not liable for repayment of money paid to date by Pikeville for the benefit of [the Debtor], does not in any way mean that Pikeville will not receive income from [the Debtor] as a result of a successful reorganization.
>
> 13. Any suggestion by Halle that Pikeville [] will not benefit from a successful . . . reorganization and will not lose money if [the Debtor] fails is totally false.

(J.A. at Docket No. 359, p. 3.)

On June 12, 2008, the bankruptcy court held a hearing on the motion filed on June 4, 2008, at which Appellant was represented by counsel. The record before the Panel reflects no objection

of counsel for Appellant to the statements quoted above.[3] The bankruptcy court sustained the Debtor's motion and entered an order approving the interim contract mining agreement on June 16, 2008.

On July 25, 2008, KCV I took a Rule 2004 examination of a representative of Appellant at which the following exchange took place:

> Q. But we know based on pleadings filed with the bankruptcy court by the debtor, that the debtor has no obligation to reimburse Pikeville for any monies that its [sic] put into this venture with Blackberry, right?
>
> A. That's true.
>
> Q. So if there's going to be a reimbursement, it's going to come from Blackberry Energy to Pikeville for Snyder's fees?
>
> A. Correct.

(J.A. at Docket No. 593-3, p. 116, lines 14-25.)

On February 6, 2009, the Debtor amended its Disclosure Statement. The Amended Disclosure Statement reads in pertinent part:

> Furthermore, Pikeville [] has provided, and will continue to provide, funds for the resumption of mining, repairs and maintenance, and continued operations of Blackberry Energy LLC and [Debtor], Pikeville [] has expended approximately $4,500,000 to $5,000,000 to date. Both Pikeville [] and Blackberry Energy LLC have provided and will provide funds and services in return for payment for future services rendered to [Debtor] by Blackberry Energy LLC and for the

---

[3] The Trustee's brief states that "[d]uring the hearing, Pikeville Energy counsel argued that the Bankruptcy Court should grant the relief requested . . . . Pikeville Energy's counsel raised no issue regarding the information in the Second Emergency Motion quoted above at the hearing or in any written papers." (Appellee's Br. at 7.) The Panel was not provided with a transcript of this hearing and we cannot, therefore, confirm the Trustee's representation regarding counsel for Appellant's statements at the hearing. However, Appellant did not contest this statement in its timely filed reply brief, and indeed, as the Trustee represents, the record reflects no objections made by Appellant in any written pleadings.

> contractual right to purchase of coal. [Debtor] is under no contractual obligation to repay Pikeville [] or Blackberry Energy LLC funds expended prior to the date of this Disclosure [Statement] by either entity for the benefit of [Debtor].

(J.A. at Docket No. 523, p. 21.)  The bankruptcy court approved the Amended Disclosure Statement by order dated February 9, 2009.

## IV.   DISCUSSION

The bankruptcy court did not err in applying judicial estoppel.  In *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752 (6th Cir. 2008), the Sixth Circuit Court of Appeals explained the equitable doctrine of judicial estoppel in detail.

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who acquiesced in the position formerly taken by him.  Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.  The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.  A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement.  Although there is no set formula for assessing when judicial estoppel should apply, it is well-established that at a minimum, a party's later position must be clearly inconsistent with its earlier position for judicial estoppel to apply.  Moreover, the doctrine of judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.

*Id.* at 757 (internal quotation marks and citations omitted).

While conceding that if the Debtor's chapter 11 reorganization plan had been confirmed it would not be entitled to an administrative expense claim, Appellant primarily argues that judicial estoppel is not applicable to its administrative expense claim here because the Debtor's case was converted to one under chapter 7. Appellant asserts that statements it made, and objections it did not make, to representations of the Debtor regarding its financing, must be viewed in the context of a failed attempt at reorganization, because had the reorganization been successful, Appellant would have been reimbursed in a variety of ways. As a result of the failure at reorganization and conversion to liquidation, however, Appellant argues it can now only be reimbursed via an administrative expense claim. According to Appellant, it is not taking an inconsistent position now because the Debtor never represented that Appellant would not seek reimbursement for its expenditures as administrative expenses if the case were converted to chapter 7 because conversion was not at issue.

Appellant also argues that judicial estoppel is not applicable because, with the exception of two "isolated questions" at the 2004 examination, the statements at issue were made by the Debtor, not by Appellant. Additionally, Appellant asserts it was not a participant in the proceedings at the time the statements were made in connection with the second motion for approval of an interim mining agreement. Appellant does, however, acknowledge that it appeared though counsel at the hearing on the motion, supported the Debtor's motion, and did not contradict any statements in the motion. It also concedes that it benefitted from the bankruptcy court's approval of the motion.

The Trustee takes the position that judicial estoppel applies here regardless of the conversion because "conversion and liquidation are possibilities in every chapter 11 case . . . ." (Appellee's Br. at 15.) The Trustee also focuses on Appellant's lack of objection to the statements made by the Debtor that it had no obligation to repay Appellant. She urges the Panel to view Appellant's application for an administrative expense claim at this juncture as a contrary position to that which Appellant took by virtue of its earlier silence or lack of objection to the Debtor's statements. In support of her position, the Trustee cites *In re Louden*, 106 B.R. 109, 112 (Bankr. E.D. Ky. 1989), in which the bankruptcy court found that a party's silence where there was a duty to make a factual disclosure gave rise to judicial estoppel. In addition, she cites to the Fourth Circuit Court of Appeals' decision in *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196-97 (4th Cir. 1998), in which it held that a single failure to correct an inaccurate factual disclosure, which is not

based upon a mistake or inadvertence, is sufficient to create an inconsistency when a contrary position is taken.

The Debtor repeatedly represented to the bankruptcy court that Appellant did not expect reimbursement for its financing of the Debtor's mining activities. Appellant was represented by counsel at hearings before the bankruptcy court where such representations were made but did not object to or attempt to qualify those representations. Appellant concedes as much in its brief before the Panel. In fact, Appellant concedes that had the case not been converted from chapter 11 to chapter 7 it would not be entitled to an administrative expense claim. The conversion of the case to chapter 7, however, does not prevent the application of judicial estoppel. As the Trustee states in her brief, conversion and liquidation are always possibilities in chapter 11 cases, possibilities for which Appellant should have considered and made allowances. After representing that it would not seek reimbursement of its investments, and allowing the Debtor to make those representations to the bankruptcy court and the Debtor's creditors, Appellant should not now be permitted to take a contrary position and pursue an administrative expense claim simply because the case has been converted to chapter 7. Appellant took a calculated business risk which ultimately did not pay off.

"'[J]udicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one.'" *Guar. Residential Lending, Inc. v. Homestead Mortgage Co., LLC*, 291 F. App'x 734, at *10 (6th Cir. 2008) (quoting *United States v. Bussell*, 504 F.3d 956, 963 (9th Cir. 2007)). Through its failure to object to, or qualify the Debtor's statements, Appellant asserted that it would not seek reimbursement for its financing. Judicial estoppel now prevents Appellant from directly contradicting that assertion by pursuing an administrative expense claim.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order denying Appellant's administrative expense claim is AFFIRMED.